T.C. Memo. 2012-103

UNITED STATES TAX COURT

PATRICK T.W. LUM AND LIBBY S. LUM, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8403-10.                        Filed April 10, 2012.

<u>Paul J. Sulla, Jr.</u>, for petitioners.

<u>Jonathan Jiro Ono</u> and <u>Peter R. Hochman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of  $6,532 with respect to the 2006 joint income tax return of petitioners.  The issue for decision is whether losses and a business energy investment credit claimed in connection with a "micro-utility" activity are limited by the passive activity rules under section 469.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect

for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petitions were filed, petitioners resided in Hawaii.

Patrick T.W. Lum (petitioner) has been an accountant for 25 years. In 2006 petitioner was employed as an executive.

In 1995 petitioner acquired a solar water heating system for personal use from Hawaii Environmental Holdings d.b.a. Mercury Solar (Mercury Solar). Mercury Solar made petitioner aware of a business opportunity which Mercury Solar markets as a "no cost/free" program. Through this program, Mercury Solar encourages buyers to purchase one solar water heating system or solar photovoltaic system, which produces electricity from solar energy, for personal use and at least one other for investment purposes. The purchase is financed through one or more loans. Mercury Solar installs the investment system at the residence of a "ratepayer", who pays a set monthly fee for a number of years to the equipment owner to purchase the solar energy produced by the investment system. A ratepayer is not an owner or purchaser of the micro-utility equipment.

Under Mercury Solar's program, the equipment owner can contract with another company, the Power Change Co., LLC (PCC), to collect ratepayers' monthly payments on behalf of the equipment owner. From these collections, PCC makes the equipment owner's loan and State excise tax payments and, at the end of the year, reports the annual income to the equipment owner. Mercury Solar's sales literature explains that the equipment owner is responsible for paying income tax and State excise tax on the ratepayer income and that the income should be reported using a Schedule C, Profit or Loss From Business.

Mercury Solar suggests that the equipment owner will qualify for certain tax deductions and credits and extends a tax credit guarantee to the equipment owner so long as he or she has a Federal or State tax liability. A referral fee is paid by Mercury Solar to the equipment owner if he or she refers others who listen to a sales presentation, purchase equipment, or agree to become a ratepayer. Mercury Solar represents that a purchase of solar equipment through its program is potentially "free" through this combination of loans, tax refunds resulting from credits and deductions, and referral and ratepayer payments.

Petitioner first became involved as a micro-utility equipment owner in 2002. Mercury Solar generally found ratepayers and matched them with solar equipment owners. Whenever petitioner acquired a new ratepayer, he customarily collected

the ratepayer's payments for approximately one year before turning this responsibility over to PCC. PCC would then collect the ratepayer's monthly payments, maintain payment records, and make petitioner's loan and State excise tax payments.

In 2006 petitioner bought a solar photovoltaic system for personal use and a solar hot water system for investment purposes from Mercury Solar. Mercury Solar installed the solar hot water system at the residence of a ratepayer.

During 2006 petitioner had six ratepayers. Petitioner did not maintain contact with his ratepayers. Beyond the forms and contracts provided by Mercury Solar and PCC, petitioner maintained virtually no records or documentation with respect to his micro-utility activity. Petitioner referred some sales leads to Mercury Solar. Petitioner's micro-utility activity had no employees, and his wife did not participate in the activity.

On the 2006 joint income tax return, petitioners claimed a net loss in connection with the micro-utility activity of $9,699, which was primarily the result of a section 179 expense deduction for the solar water heating system purchased in 2006. Petitioners also claimed a section 48 business energy investment credit of $3,861 in connection with the same solar water heating system. However, because

of statutory limitations petitioners were able to use only $2,885 of the business energy investment credit for 2006.

## OPINION

Respondent argues that petitioners' micro-utility losses and business energy investment credit are disallowed because they stem from an activity in which petitioner did not materially participate or from a rental activity, which is presumptively passive. Petitioner counters that his micro-utility activity was not a passive rental activity and that he materially participated in its operations.

Losses from a passive activity are generally allowed in the year they are sustained only to the extent of passive activity income. Sec. 469(a)(1)(A), (d)(1). Credits attributable to a passive activity are generally allowed only to the extent of the taxpayer's regular tax liability for the year with respect to all passive activities. Sec. 469(a)(1)(B), (d)(2).

In general, a passive activity is a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A taxpayer materially participates in an activity when he or she is involved on a regular, continuous, and substantial basis. Sec. 469(h)(1). Participation generally means all work done in connection with an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f), Income Tax Regs.

A taxpayer can establish material participation by satisfying any one of seven tests provided in the regulations. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see Miller v. Commissioner, T.C. Memo. 2011-219; Bailey v. Commissioner, T.C. Memo. 2001-296. Of these, petitioners assert that the five following tests are relevant to this case:

> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;
>
> (4) The activity is a significant participation activity * * * for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;
>
> \*    \*    \*    \*    \*    \*    \*
>
> (6) The activity is a personal service activity * * *, and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or
>
> (7) Based on all of the facts and circumstances * * *, the individual participates in the activity on a regular, continuous, and substantial basis during such year.

A taxpayer is treated as significantly participating in an activity if he or she participates in the activity for more than 100 hours during the taxable year. Sec. 1.469-5T(c)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). In addition, to satisfy the material participation test under paragraph (a)(7), a taxpayer must participate in an activity for more than 100 hours during the taxable year. Sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

Generally, petitioners bear the burden of proof. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C. Memo. 1972-133. This burden may shift to respondent if petitioners introduce credible evidence with respect to any relevant factual issue and to meet other conditions, including maintaining required records. See sec. 7491(a)(1).

Petitioners have not proven or presented adequate evidence to shift the burden of proof that any of the material participation tests they rely upon are satisfied. As the sole owner of the micro-utility activity, petitioner claims that he performed all "tasks, functions and services of and for the business, including management and marketing", with the exception of sending invoices to and collecting payments from his ratepayers. However, because individuals with PCC

collected most of the ratepayers' payments, maintained records regarding the income, and made petitioner's loan and State excise tax payments and Mercury Solar[1] installed the equipment at his ratepayers' homes, petitioner's participation did not constitute substantially all of the participation of any individual in the micro-utility activity.

Petitioners also have failed to prove that petitioner participated in the micro-utility activity for more than 100 hours during the year in issue or that he materially participated in the activity for any three taxable years before 2006. A taxpayer can prove participation by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Id.

While the regulations permit some flexibility with respect to the evidence required to prove material participation, we are not required to accept postevent

---

[1]For other cases involving activities of Mercury Solar, see Sparkman v. Commissioner, T.C. Memo. 2009-308, Sparkman v. Commissioner, T.C. Memo. 2005-136, aff'd, 509 F.3d 1149 (9th Cir. 2007), Hvidding v. Commissioner, T.C. Memo. 2003-151, Richter v. Commissioner, T.C. Memo. 2002-90, and Sparkman v. United States, 2009 WL 5103165 (D. Haw. Dec. 28, 2009).

"ballpark guesstimates", nor are we bound to accept the unverified, undocumented testimony of taxpayers. See Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185; Shaw v. Commissioner, T.C. Memo. 2002-35; Scheiner v. Commissioner, T.C. Memo. 1996-554.

Petitioner maintained no records or documentation of his participation such as appointment books, calendars, or logs, and he did not provide any type of narrative summary of his participation. Petitioner admitted that Mercury Solar provided him with his ratepayers and that he does not maintain contact with his ratepayers. Apart from very general statements that he researched and bought solar equipment, referred sales leads to Mercury Solar, and collected some of his ratepayers' payments, petitioner offered virtually no evidence of duties he performed, the dates they were performed, or the approximate time he spent performing them.

We conclude that petitioner did not materially participate in the micro-utility activity during the year in issue and that the micro-utility was a passive activity under section 469(c)(1). The losses reported for 2006 with respect to the micro-utility activity are subject to the passive loss limitations imposed by section 469 and are disallowed. Thus we need not address whether petitioner's micro-utility activity constitutes a passive rental activity. See sec. 469(c)(2).

In addition, the business energy investment credit claimed by petitioners is subject to the passive activity credit limitations under section 469 and is disallowed because there was no tax liability with respect to the micro-utility activity for 2006. Even if this credit were not disallowed by the application of section 469, it would otherwise be completely disallowed because of section 179. Through cross-referencing sections 38(b)(1), 46(2), and 48(a), the Internal Revenue Code establishes that the section 48 business energy investment credit is one type of section 38 general business credit. A section 38 credit is not allowable if a section 179 election has been made, as petitioners did, with respect to the same equipment. Sec. 179(d)(9); see King v. Commissioner, T.C. Memo. 1990-548 (holding that a section 179 election is irrevocable except with the consent of the Commissioner and to the extent the cost of property is deducted under section 179, it does not qualify for a credit under section 38).

We have considered the arguments of the parties not specifically addressed in this opinion. They are either without merit or irrelevant to our decision. To reflect the foregoing,

Decision will be entered for

respondent.