T.C. Memo. 2013-182

UNITED STATES TAX COURT

BEN BARTLETT AND TAMMY R. BARTLETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19031-11.                    Filed August 8, 2013.

<u>Charles Robert Brown</u> and <u>D. Loren Washburn</u>, for petitioners.

<u>David Wayne Sorensen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined the following deficiencies and

penalties with respect to petitioners' Federal income tax for tax years 2006 and

2007:

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2006 | $39,510 | $7,902 |
| 2007 | 51,076 | 10,215 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

The issues for consideration are (1) whether the passive activity loss rules of section 469 limit the loss deductions petitioners claimed for 2006 and 2007 with respect to petitioner husband's bull breeding activity and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Wyoming when they filed the petition.

Petitioner husband was raised on a farm in Texas. When he was a child, his chores included taking care of farm animals. Petitioner husband went to rodeos

**[*3]** when he was young, and he rode bulls and other animals in some small rodeos while in high school and college.

Petitioner husband earned a bachelor's degree in agriculture with a focus in horticulture. While in college he helped manage the university agriculture farm. His responsibilities on the agriculture farm included hauling hay, feeding livestock, and prepping the livestock for shows, as well as managing the greenhouse and the arboretum. Petitioner husband also spent time with his older brother, who held advanced degrees in animal science husbandry and worked on embryo transfer in cattle. Petitioner husband learned about the mechanics of and the theory behind embryo transfer from his brother.

In 1988 petitioner husband started a design and landscape business in Texas called Growin' Green (Growin' Green Texas), which became successful. In 2000 petitioner husband sold Growin' Green Texas, and petitioners moved to Jackson, Wyoming. Petitioner husband then started Growin' Green Co., a sole proprietorship, in Jackson, Wyoming, which provides landscape services and design as well as snow removal. Since 2000 Growin' Green Co. has become very successful. In tax years 2006 and 2007 Growin' Green Co. had gross receipts of over $1 million and over $3 million, respectively. Petitioner husband received

**[*4]** business income from Growin' Green Co. of over $400,000 in tax year 2006 and over $1 million in tax year 2007.

In 2005 petitioner husband started a bull breeding operation, which petitioners called Rainbow Ranch. Petitioners acquired a 1,941-acre ranch near Burley, Idaho, and purchased 40 or 50 calves from a breeder specializing in rodeo-quality cows and bulls. Rainbow Ranch is approximately 220 miles from Jackson, Wyoming.

When petitioners acquired the ranch, there were no buildings on the land, but the property was fenced to contain livestock. When petitioner husband was on the ranch, he would sleep in his truck, a nearby motel, or a doublewide trailer parked on the ranch.

In tax years 2006 and 2007 petitioner husband employed three of his Growin' Green Co. workers to stay on the ranch during the winter months, from approximately November to March. These ranch hands worked 40 hours per week on Rainbow Ranch. Petitioner also made a business arrangement with Cameron Tuckett that allowed Mr. Tuckett to graze his horses on Rainbow Ranch in exchange for providing services pertaining to the stock on Rainbow Ranch. Mr. Tuckett lived near Rainbow Ranch and operated a farm and livestock operation.

**[*5]** In evidence for the tax years at issue are (1) credit card statements for a credit card that petitioner husband used for Rainbow Ranch and (2) two schedules, one for each tax year at issue, of the hours petitioner husband claims he worked on the ranch. Petitioner husband created the schedules of hours worked several years after the tax years at issue.

Petitioner husband did not maintain a contemporaneous log, a diary, notes, or other records of the work he performed day to day relating to Rainbow Ranch-- whether performed in Wyoming or at the ranch in Idaho.

Petitioners' 2006 joint Federal income tax return was prepared on their behalf by a certified public accountant. Petitioners' 2007 joint Federal income tax return was prepared on their behalf by a second certified public accountant. On the Schedules F, Profit or Loss From Farming, for both Federal income tax returns petitioners stated that they materially participated in the operation of a bull breeding activity. Petitioners claimed loss deductions for the bull breeding activity of $105,515 for tax year 2006 and $134,763 for tax year 2007.

The notice of deficiency disallowed the loss deductions claimed related to the bull breeding activity and determined the $39,510 and $51,076 deficiencies in petitioners' 2006 and 2007 Federal income tax, respectively, and section 6662 accuracy-related penalties.

**[*6]**                           OPINION

I.      Section 469 Passive Activity Losses

Generally, a taxpayer bears the burden of proving the Commissioner's determinations in a notice of deficiency are erroneous.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491(a)(1) the taxpayer may shift the burden of proof to the Commissioner if the taxpayer complies with the relevant substantiation requirements in the Internal Revenue Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2)(A) and (B).  The taxpayer bears the burden of proving compliance with the conditions of section 7491(a)(2)(A) and (B).  See, e.g., Winslow v. Commissioner, 139 T.C. 270, 271 n.2 (2012); Hill v. Commissioner, T.C. Memo. 2010-200, aff'd per curiam, 436 Fed. Appx. 410 (5th Cir. 2011).

Petitioners contend that they have met this burden because (1) respondent did not allege that petitioners failed to cooperate with respondent and (2) petitioners claim that they introduced credible evidence.  However, there were discrepancies and inconsistencies in their evidence.  Petitioners have failed to persuasively argue that the burden of proof shifts to respondent.  The burden of proof remains with petitioners.

**[\*7]**  Respondent contends that petitioners' losses related to their bull breeding activity should be disallowed because petitioners did not materially participate in the bull breeding activity.

Section 469(a) disallows the passive activity loss of an individual taxpayer. The term "passive activity loss" means the amount, if any, by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year.  Sec. 469(d)(1); see also Dirico v. Commissioner, 139 T.C. 396, 402 (2012).  A passive activity is a trade or business in which a taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer materially participates in an activity when he or she is involved on a regular, continuous, and substantial basis.  Sec. 469(h)(1).  Participation generally means all work done in connection with an activity by an individual who owns an interest in the activity.  Sec. 1.469-5(f), Income Tax Regs.

A taxpayer establishes material participation by satisfying any one of seven tests provided in the regulations.  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see also Lum v. Commissioner, T.C. Memo. 2012-103.  Petitioners assert that the following three tests are relevant to this case:

**[*8]**   (1) The individual participates in the activity for more than 500 hours during such year;

       *        *        *        *        *        *        *

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year; [or]

       *        *        *        *        *        *        *

(7) Based on all of the facts and circumstances * * * , the individual participates in the activity on a regular, continuous, and substantial basis during such year.

Sec. 1.469-5T(a)(1), (3), (7), Temporary Income Tax Regs., <u>supra</u>.[1]  To satisfy the facts and circumstances test under section 1.469-5T(a)(7), Temporary Income Tax Regs., <u>supra</u>, a taxpayer must participate in an activity for more than 100 hours

---

[1]Respondent contends that petitioners are precluded from arguing that they meet the requirements of the 100-hour test and the facts and circumstances test because, respondent claims, petitioners first discussed these issues in their amended pretrial memorandum.  We disagree.

Respondent raised both the 100-hour test and the facts and circumstances test in the notice of deficiency, writing under "Explanation of Adjustments": "You have not met any of the seven tests for material participation as outlined under Treasury Regulation 1.469-5T(a)."  Petitioners also raised both tests in their petition, writing:  "The taxpayer meets at least one of the material participation tests as outlined in Treasury Regulation 1.469-5T(a)."

Accordingly, petitioners' arguments regarding the 100-hour test and the facts and circumstances test are properly before us.

**[\*9]** during the taxable year.  Sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

A taxpayer can prove participation by any reasonable means.  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries."  Id.  While the regulations permit some flexibility with respect to the evidence required to prove material participation, we are not required to accept postevent "ballpark guesstimates", nor are we bound to accept the unverified, undocumented testimony of taxpayers.  See, e.g., Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

Petitioner husband testified that he spent a total of more than 1,000 hours on the bull breeding activity during the tax years at issue.  There is no indication in the record that petitioner husband engaged in any recreational activities while he was on the ranch.  Likewise, there is no indication that petitioner wife traveled with petitioner husband to the ranch or was otherwise involved in Rainbow Ranch. During the years at issue she earned wages from other sources.

**[*10]**  With respect to tax year 2006 petitioner husband testified that he worked on the ranch repairing fences; cross-fencing the land; building corrals, shelters, and solar wells; installing "bucking shoots" for training young bulls to buck; and improving the range land by reseeding, cutting sagebrush, planting wheat crops for feed, and planting a more desirable bud-style grass.  He also testified that he traveled to South Dakota to pick up a particular bull and then drove that bull from South Dakota to Rainbow Ranch.

With respect to tax year 2007 petitioner husband testified that he helped his cows during calving season.  Petitioner husband described calving season as "intense"; he recalled being very involved in the calving process.  He further testified that he started training the young bulls that year, sorting them, developing their bucking skills, and training them to buck properly.

For each tax year at issue petitioner husband estimated that he spent 7 to 10 hours per week researching the bull breeding business and studying live auctions online.  He also testified that he spent time managing the bull breeding activity from Wyoming, deciding what items to purchase, from which bloodlines to breed, and where to build the corrals, among other things.  He further testified that he made several emergency trips to Rainbow Ranch.

[*11] Petitioners admit that they did not keep any records regarding petitioner husband's work on Rainbow Ranch or his research. Petitioners, however, provided two schedules that allegedly detail the numbers of hours petitioner husband spent on the bull breeding activity for each tax year. Petitioner husband testified that he created these schedules in 2009 when petitioners' returns were audited. He used his credit card statements to determine his work schedule during the tax years at issue. Petitioner husband first determined which days he made purchases in or around Burley, Idaho. Then he tried to recall what he was purchasing on those days and what task he was doing on Rainbow Ranch. Finally, he assigned a number of hours to each task. Petitioner husband testified that the schedules do not reflect all of the work he did for Rainbow Ranch; rather, he included only up to 500 hours of work each year.

At trial Mr. Tuckett on behalf of petitioners testified that he had an arrangement with petitioner husband: Mr. Tuckett could graze his livestock on Rainbow Ranch, and in exchange he would help petitioner husband with the ranch. As part of this agreement, when Mr. Tuckett checked on his livestock on Rainbow Ranch--which he did daily--he would also check on petitioner husband's livestock. Mr. Tuckett further testified that even though he helped petitioner

[*12] husband with tasks around the ranch, he was not paid to work for petitioner husband.

Mr. Tuckett recalled seeing petitioner husband at the ranch, but petitioner husband usually had workers with him when he was there. Petitioner husband estimated that the three ranch hands worked 40 hours per week while they stayed on the ranch. Petitioner husband testified that he supervised the ranch hands while he was in Wyoming.

Mr. Tuckett did not estimate how many hours he saw petitioner husband on the ranch during the tax years at issue.

Petitioners' son also testified for petitioners. In particular, petitioners' son recalled researching the bull breeding activity with his father, determining which bloodlines to use and studying the auctions online. Petitioners' son testified that he accompanied his father on the trip to South Dakota in 2006. Petitioners' son did not estimate how many hours he saw petitioner husband working on the bull breeding activity during the tax years at issue.

Kerry Friedrich, a longtime employee at Growin' Green Co., testified for petitioners. Mr. Friedrich testified that petitioner husband was the hardest worker at Growin' Green Co., keeping the most hours and doing whatever was necessary to finish a job. Mr. Friedrich remembered that petitioner husband was at Rainbow

[*13] Ranch "a couple times a month" during Growin' Green Co.'s busy season and "more often" than that during Growin' Green Co.'s off-season. Mr. Friedrich, however, could not provide any exact dates when petitioner husband was away, nor did he provide a more definite estimate of how often petitioner husband was at Rainbow Ranch.

Although petitioners provide a credible narrative summary of petitioner husband's participation, they maintained no contemporaneous records or documentation of his participation such as appointment books, calendars, or logs. Contemporaneous daily time reports, logs, or similar documents are not required if other reasonable means of establishing a taxpayer's participation exist. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra. Petitioners claim that their schedules of hours worked reasonably establish petitioner husband's participation. We disagree.

The credit card statements provide no information regarding how many hours petitioner husband spent on a given day on the bull breeding activity. Therefore, the hours petitioner husband claims he worked are merely "guesstimates". Moreover, petitioners' schedules are riddled with contradictions. On several occasions the credit card statements place petitioner husband in Wyoming or Utah when the schedules of hours claim he was working in Burley,

**[*14]** Idaho. Also, on at least one occasion petitioner husband claimed he spent 28 hours on the bull breeding activity during a 24-hour period.

Our analysis of the time petitioner husband spent in tax years 2006 and 2007 working on matters relating to Rainbow Ranch is made difficult by the lack of any contemporaneous records or other records and documentation regarding what he did specifically day to day and how much time he spent on matters relating to the bull breeding activity. In this case the lack of records and documentation is not cured by estimates made years after the fact in writing or by testimony. See, e.g., Iversen v. Commissioner, T.C. Memo. 2012-19; Fowler v. Commissioner, T.C. Memo. 2002-223; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Petitioner husband, Mr. Tuckett, petitioners' son, and Kerry Friedrich were credible witnesses. We do not doubt that petitioner husband spent time on Rainbow Ranch activities while in Wyoming. We also acknowledge that petitioner husband participated in and/or assisted with the bull breeding operation, ranch maintenance, and improvements while in Idaho.

The weight of the evidence before us, however, does not establish that during each of the tax years at issue (1) petitioner husband spent 500 hours on the

[*15] bull breeding activity;[2] or (2) petitioner husband worked more than Mr. Tuckett, who was at the ranch every day, or the ranch hands, who worked on the ranch 40 hours per week for approximately four months, regardless of whether petitioner husband worked more than 100 hours on the bull breeding activity.  See Iversen v. Commissioner, T.C. Memo. 2012-19.  Petitioners have failed to meet the criteria of the 500-hour or 100-hour tests.

The weight of the evidence before us also fails to establish that petitioner husband worked on the bull breeding activity in a regular, continuous, and substantial manner.  During the tax years at issue petitioner husband ran Growin' Green Co., a highly successful, full-time business over 200 miles from Rainbow Ranch.  He was actively involved with and in charge of Growin' Green Co.  The evidence shows that petitioner husband was at the ranch approximately 58 days in tax year 2006 and approximately 35 days in tax year 2007.  Petitioner husband's sporadic trips to Rainbow Ranch coupled with his intense work ethic

---

[2]Petitioners contend that petitioner husband's driving back and forth between Wyoming and Idaho should count towards the 500 hours required by sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).  We do not discuss this issue because even if we include petitioner husband's driving time in the 500-hour calculation, there is not enough evidence to support petitioner husband's claim that he spent 500 hours on the bull breeding activity.

[*16] with respect to Growin' Green Co. do not suggest that he worked on the bull breeding activity in a regular or continuous manner.

Petitioners, however, claim that petitioner husband spent 7 to 10 hours per week researching for Rainbow Ranch while also managing the ranch from Wyoming. If petitioner husband were researching, running, supervising, managing, and involved with all significant activities of Rainbow Ranch, as petitioners seem to claim, we would expect petitioners to have offered into evidence extensive research notes, files, to-do lists, home and mobile phone records, business plans, project descriptions, instructions to employees, and the like, documenting and establishing petitioner husband's active involvement in the regular, continuous, and substantial management and day-to-day activities of the bull breeding activity. That documentary evidence is absent.

Even if petitioners had provided documentary evidence regarding petitioner husband's management activities, we would not take into account those management activities under the facts and circumstances test. A taxpayer's management activities are not taken into account under the facts and circumstances test (1) if another person also receives compensation for management services relating to the activity or (2) if another person spends more time on management services relating to the activity than the taxpayer.

**[*17]** Sec. 1.469-5T(b)(2)(ii)(A) and (B), Temporary Income Tax Regs., supra; cf. sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988) (stating that an individual's investor activities, including studying and reviewing financial statements or reports on operations as well as monitoring the finances or operations of the activity in a nonmangerial capacity, do not qualify as participation in an activity unless the individual is directly involved in the day-to-day management of the activity).

On petitioners' 2006 Federal income tax return petitioners included $16,750 of management fees in their calculation of Schedule F expenses. On petitioners' 2007 Federal income tax return petitioners included $13,509 of management fees and "outside service" in their Schedule F calculation of expenses. Petitioner husband testified that these fees were paid to Mr. Tuckett. Although Mr. Tuckett claims that he was never paid by petitioner husband and petitioner husband claims that the payments made to Mr. Tuckett were merely reimbursements, petitioner husband wrote a letter to the Internal Revenue Service during his audit stating that the bull breeding activity incurred "management cost throughout the year". The record therefore contains substantial inconsistency on the question whether petitioner paid Mr. Tuckett for management services.

[*18] Petitioner husband did not engage in the bull breeding activity in a regular, continuous, and substantial manner. On this record we conclude that petitioners have failed to meet the criteria of the facts and circumstances test, regardless of whether petitioner husband worked more than 100 hours on Rainbow Ranch.

Petitioners did not materially participate in the bull breeding activity as required under section 469 and the related regulations. Accordingly, we sustain respondent's determination regarding petitioners' bull breeding activity.

## II.   Section 6662(a) Accuracy-Related Penalty

Respondent determined that petitioners are liable for accuracy-related penalties pursuant to section 6662(a) for tax years 2006 and 2007. Section 6662(a) adds to the tax required to be shown on the taxpayer's return 20% of any underpayment attributable to, among other things, any substantial understatement of income tax within the meaning of section 6662(b)(2). The phrase "substantial understatement of income tax" means an understatement that exceeds the greater of $5,000 or 10% of the income tax required to be shown on the tax return for the taxable year. Sec. 6662(d)(1)(A).

Under section 7491(c) the Commissioner bears the burden of production regarding the taxpayer's liability for any penalty. See also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner has met

[*19] this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Respondent determined that petitioners should have reported income tax liabilities of $145,628 and $311,160 on their 2006 and 2007 Federal income tax returns, respectively. Respondent also determined that petitioners understated their income tax by $39,510 for tax year 2006 and by $51,076 for tax year 2007, both of which exceed 10% of the income tax petitioners should have reported on their 2006 and 2007 Federal income tax returns. Respondent has shown that petitioners substantially understated their income tax liabilities for tax years 2006 and 2007.

Petitioners therefore are liable for the accuracy-related penalties unless they can show they had reasonable cause for and acted in good faith regarding part of each of the underpayments. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. For purposes of section 6664(c) a taxpayer may establish reasonable cause and good faith by showing reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer relies reasonably on professional advice if he or she proves the following by a preponderance of the evidence: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the

[*20] taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Petitioners failed to provide any evidence about the information they provided to their tax return preparers, both of whom were certified public accountants, regarding Rainbow Ranch.  Moreover, neither tax return preparer testified at trial.  Petitioners have not shown that they had reasonable cause or acted in good faith.

Accordingly, petitioners are liable for the accuracy-related penalties under section 6662(a).  Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

for respondent.