T.C. Memo. 2018-169

UNITED STATES TAX COURT

WALTER J. ANTONYSHYN AND GEORGIANA L. ANTONYSHYN,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28648-13.                           Filed October 10, 2018.

James G. LeBloch, for petitioners.

Eric M. Heller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  By statutory notice of deficiency dated November 6, 2013, respondent determined deficiencies in petitioners' Federal income tax of $25,407 and $21,244 and accuracy-related penalties pursuant to section 6662(a) of $5,081 and $4,249 for the 2009 and 2010 taxable years (years at issue),

[*2] respectively.[1] After concessions, the issue remaining for decision is whether petitioners[2] are entitled to rental real estate loss deductions claimed on their Schedules E, Supplemental Income and Loss, under section 469 for the years at issue. We resolve this issue in favor of respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when their petition was timely filed with the Court.

I.     Petitioners' Residential Rental Properties

During the years at issue Mr. Antonyshyn was an engineer who worked full time for L.K. Comstock & Co. as a project manager. Mrs. Antonyshyn was not employed but she held herself out as the property manager of petitioners' residential rental properties.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] Mr. Antonyshyn did not appear in Court at trial, but the Court's decision will be binding upon both spouses.

[*3] During the years at issue petitioners owned the following six residential rental properties: (1) three single-family residences--one in Raleigh, North Carolina (North Carolina property), a second in O'Fallon, Missouri (Missouri property), and a third in Rockwall, Texas (Texas property); (2) two duplexes, each containing two units, in Augusta, Georgia (collectively, Georgia properties); and (3) a condominium in Philadelphia, Pennsylvania (Pennsylvania property).

Mr. Antonyshyn originally purchased the Texas property as a residence, but he moved to California after he was transferred for work. Petitioners retained the Texas property and used it as a rental property. It was rented in 2008, but a fire partly destroyed the house soon after. The Texas property underwent construction until 2009 and was not rented out, i.e., did not generate any rental income, during the years at issue.

The Pennsylvania property also was not rented out and thus did not generate any rental income during the years at issue. It was originally purchased for petitioners' son, who lived there while he attended college. After their son's graduation petitioners intended to lease the Pennsylvania property but had difficulty doing so because of problems with the condominium association. The rental issues were never resolved, and they sold the property in 2011.

**[*4]** Petitioners hired management companies to oversee the North Carolina property, the Georgia properties, and the Missouri property. The management companies found prospective tenants for petitioners, inspected properties, collected rents, received tenant complaints, issued notices to tenants, and informed petitioners about any issues on the properties.

Mrs. Antonyshyn tracked her time devoted to their residential rental properties by making notes on pieces of paper as she completed any associated activity. Mr. Antonyshyn would later input her time in a computer program to create a report of her activities on a weekly basis. Mrs. Antonyshyn reported 1,007 and 1,228 hours for 2009 and 2010, respectively. Many of these hours were for nonmanagerial activities, i.e., investor-type activities.

## II.    Petitioners' Tax Returns

Petitioners prepared and filed timely (with the assistance of a paid preparer) their Forms 1040, U.S. Individual Income Tax Return, for the years at issue. As relevant here, petitioners attached to each Form 1040 a Schedule E reporting rental income and expenses attributable to their residential rental properties. On their 2009 Schedule E they claimed loss deductions totaling $87,480. On their 2010 Schedule E they claimed loss deductions totaling $81,152. Respondent disallowed

[*5] the claimed loss deductions for 2009 and 2010 because petitioners' residential rental activities were passive activities in the context of section 469.

OPINION

I.    Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Segel v. Commissioner, 89 T.C. 816, 842 (1987). As relevant here, this burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate claimed loss deductions by maintaining and producing adequate records. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001). If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2).

Petitioners allege that the burden of proof should shift to respondent pursuant to section 7491(a) because they have provided credible evidence to

**[\*6]** substantiate their claimed loss deductions.  As discussed infra, the evidence does not establish that the burden of proof should shift from petitioners to respondent under section 7491(a) as to any issue of fact.

II.    Section 469 Losses From Residential Rental Activities

A taxpayer is allowed deductions for certain business and investment expenses under sections 162 and 212.  Where the taxpayer is an individual, however, section 469 generally disallows any passive activity loss for the taxable year in which the loss is sustained and treats it as a deduction allocable to the same activity for the next taxable year.  Sec. 469(a) and (b).  A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity generally is any activity involving the conduct of a trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial.  Sec. 469(h)(1).  Rental activity is treated as a per se passive activity, regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).

As relevant here, section 469(c)(7) provides an exception to the rule that a rental activity is per se passive.  The rental activities of a taxpayer in a real

**[*7]** property trade or business who meets certain enumerated requirements (a real estate professional) are not subject to the per se rental activity rule.  Sec. 469(c)(7)(A); sec. 1.469-9(b)(6), (c)(1), Income Tax Regs.  Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1).  See sec. 1.469-9(e)(1), Income Tax Regs.

Petitioners contend that Mrs. Antonyshyn qualifies as a real estate professional.[3]  A taxpayer qualifies as a real estate professional if:  (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which he or she materially participates.  Sec. 469(c)(7)(B).

A taxpayer may establish hours of participation in a real property trade or business by any reasonable means.  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  Contemporaneous daily reports are not

---

[3]In the case of a joint Federal income tax return, such as here, the requirements to qualify as a real estate professional are satisfied if and only if either spouse separately satisfies the requirements; there can be no aggregation of spouses' hours to satisfy the requirements.  See sec. 469(c)(7)(B) (flush language); Moss v. Commissioner, 135 T.C. 365, 368 (2010).  In any event the parties have stipulated that Mr. Antonyshyn was not a real estate professional during the years at issue.

**[*8]** required if the taxpayer can establish participation by other reasonable means. Id. Reasonable means includes "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services". Id. However, this Court has noted previously that it is not required to accept a postevent "ballpark guesstimate" or the unverified, undocumented testimony of taxpayers. See, e.g., Moss v. Commissioner, 135 T.C. 365, 369 (2010); Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

In determining whether Mrs. Antonyshyn was a real estate professional during the years at issue, there is no dispute that her residential rental activities constitute a real property trade or business. In addition we assume (without deciding) that she materially participated in this real property trade or business. However, even with this undisputed fact and favorable assumption, we find that Mrs. Antonyshyn did not qualify as a real estate professional during the years at issue because she failed to meet the 750-hour requirement.

Mrs. Antonyshyn testified that she tracked her time devoted to her and Mr. Antonyshyn's residential rental properties by making notes on pieces of paper as she completed any associated activities. Mr. Antonyshyn would later enter her

**[*9]** time in a computer program to keep track of her activities. She testified that she reviewed these computerized logs for accuracy.

Numerous entries in the logs for the years at issue pertained to investment activities. Respondent contends that the hours related to investment activities should not count towards the 750-hour requirement. If a taxpayer's capacity in a given activity is more akin to that of an investor, then the activity cannot be treated as participation for purposes of deducting passive losses unless the taxpayer is involved in day-to-day management. Sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., supra. Section 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., supra, defines investor activities as follows:

> (B) Work done in individual's capacity as an investor. For purposes of this paragraph (f)(2)(ii), work done by an individual in the individual's capacity as an investor in an activity includes--
> (1) Studying and reviewing financial statements or reports on operations of the activity;
> (2) Preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and
> (3) Monitoring the finances or operations of the activity in a non-managerial capacity.

Mrs. Antonyshyn secured the services of three different management companies to handle the day-to-day operations of most of her and Mr.

[*10] Antonyshyn's residential rental properties during the years at issue.[4] Mrs. Antonyshyn contracted for these management companies to handle many of the daily operational obligations that a real estate professional would perform. These companies handled activities such as collecting rent, inspecting the properties, showing the properties, advertising vacancies, and handling maintenance calls, which they would relay to Mrs. Antonyshyn. We find that Mrs. Antonyshyn performed little to no day-to-day management or operations of petitioners' real estate activities. Accordingly, the log entries for investment activities do not count towards the 750-hour requirement for the years at issue. See Barniskis v. Commissioner, T.C. Memo. 1999-258, slip op. at 11-12.

Her logs also included entries pertaining to seminars. Petitioners did not provide evidence to show how these seminars pertained to their residential rental properties. Likewise, these hours should not be counted.

Mrs. Antonyshyn's logs included several discrepancies. For example, her 2010 log included an entry for collecting rent for the Texas property, which was not rented during 2010. The 2009 log included an entry for a Colorado property.

_____

[4]Petitioners did not hire a management company to handle the day-to-day operations for the Pennsylvania property and the Texas property during the years at issue, but neither property was rented out, i.e., generated any income, during the years at issue.

[*11] Petitioners did not own a property in Colorado during the years at issue. Sometimes Mrs. Antonyhsyn would report 45 minutes for a task, but on another day she would report four hours for the same task, making her logs inconsistent. Mrs. Antonyshyn's logs included excessive hours; she would report four hours for traveling to and from the post office, but the round trip drive was approximately 45 minutes. Her logs also included entries for services that the management companies or a repairman or gardener performed.

Further, there are no supporting documents to substantiate the hours Mrs. Antonyshyn reported for the years at issue. We conclude that the logs are not reliable and that Mrs. Antonyshyn did not meet the 750-hour requirement for the years at issue. Accordingly, she was not a real estate professional. We sustain respondent's determination that petitioners' Schedule E rental real estate loss deductions are not allowed for the years at issue.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

**[*12]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.