**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2015-53

UNITED STATES TAX COURT

NICHOLAS S. FARRIS AND KIRSTIN B. FARRIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19100-12S.                    Filed September 8, 2015.

Chris Economou, for petitioners.

Jamie M. Stipek, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended and in effect for 2010.  Rule references are to the Tax
Court Rules of Practice and Procedure.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated April 26, 2012 (notice), respondent determined a $4,628 deficiency in petitioners' 2010 Federal income tax and imposed a $925.60 accuracy-related penalty.[2]

The issues for decision are: (1) whether petitioners are entitled to a deduction for a loss from their rental real estate activity, the resolution of which depends upon whether section 469(c)(7) applies to Mrs. Farris (petitioner);[3] and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Oklahoma.

Petitioner was hired as the marketing director for Excel Therapy Specialists, LLC (Excel), on August 8, 2005, and was so employed during 2010. According to a letter dated June 13, 2005 (offer letter), Excel offered petitioner an annual salary of $34,000 based on a minimum of 24 hours a week; in the year in issue petitioner

---

[2]A deficiency and accuracy-related penalty for 2009, now conceded by petitioners, are also determined in the notice of deficiency.

[3]Mr. Farris does not claim to be a taxpayer so described.

earned $88,005 from her employment with Excel. At all times relevant, petitioner was considered a part-time employee of Excel.

Petitioner did not maintain a time log or other written record of the time she spent performing personal services for Excel during 2010. Taking into account vacation time, petitioner estimates that she worked approximately 1,040 hours for Excel for that year.

In addition to her part-time job with Excel, petitioner performed personal services in connection with two rental real estate properties (rental properties) that petitioners owned in 2010. The rental properties are in Tulsa, Oklahoma: one at 3816 South Jamestown (Jamestown property) and the other at 7463 E. 3d Street (3d Street property). Mr. Farris had purchased the Jamestown property before 2010 and apparently before petitioners were married. The Jamestown property was managed by a property management company in 2010. Petitioners purchased the 3d Street property on September 21, 2010.

As between petitioners, petitioner was primarily responsible for managing and maintaining the rental properties although Mr. Farris contributed as well. Among other things, petitioner met with prospective tenants, corresponded with tenants, negotiated and prepared leases, and collected rent due from tenants of the

3d Street property. The management company collected rent and oversaw maintenance requests for the Jamestown property.

Petitioner personally made repairs and renovations to the rental properties, including repairing damage caused by dry rot, patching holes in walls, sanding and painting doors and walls, pulling wallpaper, laying and cutting kitchen tiles, and sanding and painting cabinet doors.

On or around January 26, 2012, during respondent's examination of petitioners' 2010 Federal income tax return, petitioner prepared a log (initial log) of the hours allegedly devoted to the rental properties during 2010. According to the initial log petitioners spent 852 hours performing services for their rental real estate activity. Petitioner created the initial log using notes she had jotted down at or around the time she performed services for the rental properties. Most of the hours reported on the original log are attributable to petitioner.

On or around March 23, 2012, petitioner prepared a second log (revised log) that includes additional hours not reported in the initial log. According to petitioners the additional hours included in the revised log are based on notes that Mr. Farris took at or around the time that petitioners performed services for the rental properties. According to the revised log petitioners spent 1,254 hours

performing personal services for their rental real estate activity. As with the initial log, most of the hours reported on the revised log are attributable to petitioner.

The entries in the logs provide generalized descriptions of the work that petitioners performed on a specific day or over a specified period and the amount of time that petitioners, or one of them, spent on the activity described. The logs do not identify the specific rental property to which the services relate, nor do the logs identify which of them performed the services.

Many if not most of the entries in the logs relate to research petitioners conducted on the housing market. According to the logs, that research was performed by searching the Internet and/or by what was described in the logs as "prospect by car".

Petitioners' timely filed joint 2010 Federal income tax return was prepared by a paid income tax return preparer. On that return petitioners reported income and expenses attributable to the rental properties on a Schedule E, Supplemental Income and Loss. Taking into account the income and expenses, the Schedule E shows a net loss of $20,965. That loss is taken into account in the $168,772 of adjusted gross income reported on petitioners' 2010 return.

The 2010 rental property loss is disallowed in the notice. According to respondent's explanation: "[T]he taxpayer fails the half personal services test;

thus rental real estate losses are limited by section 469". Respondent also imposed a section 6662(a) accuracy-related penalty on various grounds for the year in issue. Some of the adjustments made in the notice have been agreed to between the parties or conceded by one or the other of them, and other adjustments are computational. Those adjustments will not be discussed.

## Discussion

As a general rule, the Commissioner's determination in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[4] Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

## I. Rental Real Estate Activity

A taxpayer is generally allowed deductions for certain business and income-producing expenses. See secs. 162, 212. Section 469(a) generally disallows for the taxable year any passive activity loss. A passive activity loss is the excess of

---

[4]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business or activity for the production of income in which the taxpayer does not materially participate. Sec. 469(c)(1), (6).

Rental activity is generally treated as per se passive regardless of whether the taxpayer materially participates. Sec. 469(c)(2). However, the rental activity of a taxpayer is not treated as per se passive if the taxpayer satisfies the requirements of section 469(c)(7)(B).[5] Sec. 469(c)(7)(A)(i). If a taxpayer is described in that section (sometimes that taxpayer is referred to as a "real estate professional"), then section 469(c)(2) does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income, is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1); Fowler v. Commissioner, T.C. Memo. 2002-223; sec. 1.469-9(e), Income Tax Regs. Petitioners' rental real estate activity constitutes a

---

[5]There is an additional exception for rental real estate activity losses of a natural person(s). See sec. 469(i). The deduction is phased out as adjusted gross income, modified by sec. 469(i)(3)(F), exceeds $100,000, with a full phaseout occurring when modified adjusted gross income equals $150,000. Sec. 469(i)(3)(A). Respondent determined in the notice of deficiency that the phaseout rules of sec. 469(i)(3) preclude petitioners from currently deducting any of their rental real estate loss, a point petitioners do not dispute.

"real property" trade or business within the meaning of section 469.[6] See sec.

469(c)(7)(C). We proceed without finding that petitioner materially participated

in the rental real estate activity during 2010. See sec. 469(h).

Although the application of section 469 can be complicated, the

disagreement between the parties is relatively simple--the parties disagree as to the

number of hours petitioner spent providing personal services during 2010 as an

Excel employee and the number of hours she spent performing personal services

in connection with petitioners' rental real estate activity. To be considered a real

estate professional (i.e., a taxpayer to whom section 469(c)(7)(A) applies) and

entitled to the deduction here in dispute petitioners must establish that the hours

petitioner spent in connection with their rental real estate activity exceed the hours

she spent performing personal services for Excel. See sec. 469(c)(7)(B)(i).[7]

---

[6]There is nothing in the record that suggests that petitioner, or petitioners, elected to treat all of their interests in rental real estate as one activity. See sec. 469(c)(7)(A). Technically, they have two separate rental real estate activities. Because it makes no difference to the outcome of this case, and for convenience, we refer to petitioners' rental real estate activity as though it was a single activity.

[7]Given the explanation in the notice of deficiency for the disallowance of the loss deduction here in dispute, we proceed as though respondent agrees that petitioner spent more than 750 hours providing personal services in petitioners' rental real estate activity during 2010. See sec. 469(c)(7)(B)(ii).

Relying upon the revised log, petitioners argue that petitioner did. Respondent disagrees, and for the following reasons, so do we.

According to petitioners, petitioner spent 1,040 hours working for Excel in 2010. According to respondent, petitioner's compensation from Excel suggests that petitioners have understated the amount of time petitioner spent providing personal services to that company during 2010. The only direct evidence on the point is petitioner's testimony, which finds some support in the offer letter. Assuming, without finding, that petitioner's estimate is accurate, we proceed as though she spent 1,040 hours performing services as an employee of Excel during 2010.

Next we consider the time petitioner spent performing personal services in petitioners' real estate trade or business. Petitioner's initial log, prepared during the examination of petitioners' 2010 return shows that petitioners collectively spent 852 hours performing services for their rental real estate activity. Even if we were to attribute every hour recorded on that log to petitioner, she would not satisfy the test set forth in section 469(c)(7)(B)(i).

The revised log shows that petitioners collectively spent 1,254 hours performing services for their rental real estate activity. The revised logs, however, lack proper substantiation by contemporaneous verification or other reasonable

means.  The temporary regulations provide that hours of participation may be established by "[c]ontemporaneous daily time reports, logs, or similar documents". Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  But participation can also be established by other reasonable means, such as "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services".  Id.  For purposes of that regulation, we are not required to accept postevent "ballpark guesstimates", nor are we bound to accept the unverified testimony of taxpayers in the absence of adequate documentation.  See, e.g., Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

Petitioner did not keep a contemporaneous log of the hours that she devoted to petitioners' rental real estate activity.  Petitioner did refer to contemporaneous "notes" she used to create the logs, but those notes were not provided to the Court. The logs were created in 2012, apparently in connection with the examination of petitioners' 2010 return.  Furthermore, we are unable to identify with any degree of certainty which entries on the logs are attributable to petitioner and which entries are attributable to Mr. Farris.  The distinction is important because only the hours attributable to petitioner count.  See sec. 469(c)(7)(B).  On consideration of

the entire record, we reject petitioners' claim as to the hours petitioner spent providing personal services in their rental real estate activity.

Because we are not persuaded that petitioner spent more time on petitioners' rental real estate activity during 2010 than she did working for Excel, petitioners have not established that she is a taxpayer to whom section 469(c)(7)(A) applies. It follows that respondent's disallowance of the loss deduction here in dispute is sustained.

## II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.[8] "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to the imposition of the section 6662(a) accuracy-related penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent has demonstrated that

---

[8]In this case, the deficiency, understatement of tax, and underpayment of income tax are all computed in the same manner. See secs. 6211, 6662(d)(2), 6664(a).

petitioners failed to keep accurate records with respect to petitioner's participation in petitioners' rental real estate activity. Respondent has satisfied his burden of production. See sec. 7491(c).

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). For purposes of section 6664(c) a taxpayer may be able to establish reasonable cause and good faith by showing reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. To establish good faith and reasonable cause through reliance on professional advice, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners' 2010 return was prepared by a paid income tax return preparer. The fact that petitioners had a return preparer prepare their return does not, in and of itself, prove that they acted with reasonable cause and in good faith. See id. at 99-100. Importantly, petitioners offered no evidence establishing that they gave the return preparer all necessary and accurate information, such as records to

substantiate the time spent by petitioner in petitioners' rental real estate activity. Instead, petitioner testified that she did not know what was given to the return preparer because Mr. Farris "pretty much handles all of that".  Although both Mr. Farris and petitioners' return preparer were present during the trial, neither was called as a witness.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).  Petitioners have not shown that they acted in good faith and had reasonable cause for the underpayment of tax required to be shown on their 2010 return.  Accordingly, they are liable for a section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered

under Rule 155.