T.C. Summary Opinion 2017-6

UNITED STATES TAX COURT

ALVIN JONES AND CHANEE JONES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19645-14S.                     Filed February 7, 2017.

Alvin Jones, pro se.

Shannon E. Loechel, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in effect when the

petition was filed. Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended and in effect for the years in issue. Rule references are
to the Tax Court Rules of Practice and Procedure.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In notices of deficiency dated June 10, 2014 (notices), respondent determined deficiencies in petitioners' 2011 and 2012 Federal income tax as follows:

| Year | Deficiency |
|------|-----------|
| 2011 | $4,636 |
| 2012 | 16,457 |

After concessions, the issue for decision is whether petitioners are entitled to deduct losses from their rental real estate activity, the resolution of which depends upon whether section 469(c)(7) applies to Mr. Jones (petitioner).[2]

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Georgia.

_____

[2]Mrs. Jones does not claim to be a taxpayer in a real property business. She worked full time for Turner Services, Inc., during both years in issue. She did not appear at trial and did not sign the stipulation of facts admitted into evidence at trial. Accordingly, on October 8, 2015, we dismissed the case as to her for lack of prosecution. See Rule 123. The decision to be entered with respect to her, however, will be consistent with the decision to be entered with respect to petitioner.

At all times relevant petitioner owned and operated Georgia First Insurance, LLC (Georgia First).[3]  In February 2011 petitioner began selling American Family Insurance insurance policies through Georgia First.

According to payroll records from Georgia First, petitioner was paid for 519.99 hours of work during 2011 and 173.33 hours during 2012.  For 2011 the payroll records reflect petitioner's hours only from May through December.  The payroll records show the extent of petitioner's compensation from Georgia First; they do not necessarily show the total time that he spent performing services in connection with the business.  The payroll records also show that petitioner employed three people, including an agency manager, during 2011 and 2012.

Among other things and in addition to his managerial duties with respect to Georgia First, petitioner was responsible for taking photographs of any houses or properties subject to an insurance policy to be underwritten through Georgia First. To that end, petitioner drove to many locations within Georgia during the years in issue.

In addition to the personal services he performed in connection with Georgia First, petitioner performed personal services with respect to 10 rental real

---

[3]Georgia First is a single-member limited liability company treated as a sole proprietorship for Federal income tax purposes.

estate properties that petitioners owned in 2011 and 11 rental real estate properties that petitioners owned in 2012 (rental properties).  Each rental property was a single-family home.  Three of the rental properties are in Texas, and the remaining properties are in Georgia.  Petitioner described at least nine of the rental properties as "section 8" housing.[4]

During the years in issue petitioners did not engage a management company, and as between petitioners, petitioner was primarily responsible for managing and maintaining the rental properties.  With respect to the section 8 housing rental properties, petitioner spent considerable time complying with the requirements of that program, which included, among other things, annual inspections, tenant qualification, and the initial qualification of the one rental property purchased in 2012.  Petitioner also met with prospective tenants, corresponded with tenants, negotiated and prepared leases, purchased supplies for repairs, met with contractors, oversaw repairs, personally made repairs, paid various bills, and collected rent due from tenants.

---

[4]The section 8 housing program under the United States Housing Act of 1937 authorizes a private landlord who rents to a low-income tenant to receive assistance payments from the Department of Housing and Urban Development (HUD) in an amount calculated to make up the difference between the tenant's rent payments and the contract rent agreed upon by the landlord and HUD.  See Cisneros v. Albine Ridge Grp., 508 U.S. 10, 12 (1993); see also 42 U.S.C. sec. 1437f (2006).

Petitioner maintained contemporaneous logs of the hours he claims to have devoted to the rental properties during 2011 and 2012. According to the logs petitioner spent 951 hours and 1,040 hours performing services for the rental properties for 2011 and 2012, respectively. Many of the hours reported on the logs relate to the travel time between Georgia and Texas. Most of the hours reported on the logs are attributable to petitioner although some of them might be attributable to Mrs. Jones. The entries in the logs provide generalized and abbreviated descriptions of the work that petitioner performed on a specific property on a specific day and the amount of time that he spent on the activity described.

Petitioners' timely filed joint 2011 and 2012 Federal income tax returns were prepared by a paid income tax return preparer. On each of those returns petitioners reported income and expenses attributable to the rental properties on a Schedule E, Supplemental Income and Loss. The Schedules E show net losses of $32,790 and $54,959 for 2011 and 2012, respectively. Those losses are taken into account in the $88,593 and $106,080 adjusted gross income reported on petitioners' 2011 and 2012 returns, respectively.

Petitioners' 2011 and 2012 returns each also include a Schedule C, Profit or Loss From Business, related to Georgia First. On the Schedules C petitioner

reported driving 17,742 and 19,777 business miles in connection with Georgia First during 2011 and 2012, respectively.

The notices disallowed deductions for the rental real estate losses. According to respondent's explanation in the notices, "the requirements of section 469(c)(7)" were not met by either petitioner for either year. Therefore, according to the notices, the rental real estate losses are limited by section 469. Some of the adjustments made in the notices have been agreed to between the parties or conceded by one or the other of them, and other adjustments are computational. Those adjustments will not be discussed.

## Discussion

As a general rule, the Commissioner's determination in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[5] Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

[5]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

A taxpayer is generally allowed deductions for certain business and income-producing expenses.  See secs. 162, 212.  Section 469(a) generally disallows for the taxable year a deduction for any passive activity loss.  A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business or activity for the production of income in which the taxpayer does not materially participate.  Sec. 469(c)(1), (6).

Rental activity is generally treated as per se passive regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).  However, the rental activity of a taxpayer is not treated as per se passive if the taxpayer satisfies the requirements of section 469(c)(7)(B).[6]  Sec. 469(c)(7)(A)(i).  If a taxpayer is described in that section (sometimes that taxpayer is referred to as a "real estate professional"), then section 469(c)(2) does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income,

---

[6]There is an additional exception for rental real estate activity losses of a natural person(s).  See sec. 469(i).  The deduction is phased out as adjusted gross income, modified by sec. 469(i)(3)(F), exceeds $100,000, with a full phaseout occurring when modified adjusted gross income equals $150,000.  Sec. 469(i)(3)(A).  In the notices of deficiency respondent determined that because of the phaseout provisions, petitioners are entitled to a $10,869 deduction for 2011 and are precluded from currently deducting any of their rental real estate loss for 2012, a point they do not dispute if they are not otherwise entitled to a deduction for the entire loss shown on each Schedule E.

is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; sec. 1.469-9(e), Income Tax Regs. Petitioners' rental real estate activity constitutes a "real property" trade or business within the meaning of section 469.[7] <u>See</u> sec. 469(c)(7)(C). We proceed without finding that petitioner materially participated in the rental real estate activity during 2011 and 2012. <u>See</u> sec. 469(h).

Although the application of section 469 can be complicated, the disagreement between the parties is relatively simple--the parties disagree as to the number of hours petitioner spent providing personal services during 2011 and 2012 to Georgia First and the number of hours he spent performing personal services in connection with petitioners' rental real estate activity. In addition to another requirement, to be considered a real estate professional (i.e., a taxpayer to whom section 469(c)(7)(A) applies) and entitled to the deductions here in dispute, petitioners must establish that the hours petitioner spent in connection with their rental real estate activity exceed the hours he spent performing personal services for Georgia First. <u>See</u> sec. 469(c)(7)(B)(i).

---

[7]Because of an election they made for Federal income tax purposes, petitioners' interests in the rental properties are treated as one activity. <u>See</u> sec. 469(c)(7)(A).

According to petitioner, during the years in issue his "primary focus in business every day of the week" was his rental properties. Petitioner did not keep a log of the hours that he devoted to Georgia First but generally testified that "the nature of the [insurance] business * * * [did] not require * * * [him] to be there". The only direct evidence on the point is petitioner's testimony, which finds some support in Georgia First's payroll records showing that petitioner employed three people, including an agency manager, to conduct his insurance business. The payroll records also show that during the years in issue petitioner was paid for 519.99 hours of work during 2011 and 173.33 hours during 2012. Petitioner acknowledges, however, that the payroll records show only the hours for which he received compensation; they do not reflect the actual time he spent performing services for Georgia First. That fact is clear when we take into consideration the substantial business miles petitioner drove during the years in issue in addition to other tasks we expect he performed for Georgia First.

The temporary regulations provide that hours of participation may be established by "[c]ontemporaneous daily time reports, logs, or similar documents". Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). But participation can also be established by other reasonable means, such as "appointment books, calendars, or narrative summaries" that identify the

services performed and "the approximate number of hours spent performing such services". Id. For purposes of that regulation, we are not required to accept postevent "ballpark guesstimates", nor are we bound to accept the unverified testimony of taxpayers in the absence of adequate documentation. See, e.g., Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

Other than petitioner's general testimony that he spent more time performing services for petitioners' rental real estate activity than he did for Georgia First, petitioners did not present any evidence (such as time logs) or estimates of the total time petitioner spent performing services for Georgia First from which we can determine with any degree of certainty how many hours he dedicated to Georgia First during the years in issue. Because petitioners have failed to establish how many hours petitioner spent performing services for Georgia First, petitioners have failed to establish that petitioner spent more time on petitioners' rental real estate activity during the years in issue than he did for Georgia First. Accordingly, petitioners have not shown that petitioner is a taxpayer to whom section 469(c)(7)(A) applies. It follows that respondent's disallowance of the loss deductions here in dispute is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.
