T.C. Memo. 2020-46

UNITED STATES TAX COURT

ZAID HAKKAK AND LAYLA NAJI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20306-15.                    Filed April 13, 2020.

Zaid Hakkak and Layla Naji, pro sese.

Kimberly A. Santos, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  By statutory notice of deficiency dated May 12, 2015,

respondent determined deficiencies in petitioners' Federal income tax of $162,714

and $81,648 and accuracy-related penalties pursuant to section 6662(a) of $32,542

[*2] and $16,329 for the 2011 and 2012 taxable years (years at issue),

respectively.[1] After concessions, there is one issue remaining for decision:

whether petitioners are entitled to treat as nonpassive certain rental real estate

losses they previously treated as passive under section 469 on their Schedules E,

Supplemental Income and Loss, for the years at issue. We resolve this issue in

respondent's favor.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of

facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in California when they timely filed their petition with the

Court.

I.     Petitioners' Background

During at least the years at issue Mr. Hakkak and Ms. Naji were a married

couple and had two children; Ms. Naji was a homemaker and Mr. Hakkak was an

attorney, licensed to practice in the State of California. Mr. Hakkak was

predominantly a personal injury attorney but handled other legal matters such as

bankruptcy and criminal matters. Petitioners reported Mr. Hakkak's income and

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[*3] expenses attributable to his non-personal injury work during the years at issue on Schedules C, Profit or Loss From Business, as further discussed below. Mr. Hakkak's personal injury work was conducted through an S corporation, Z Dean Hakkak, A Professional Law Corp. (Z Dean Hakkak), that he wholly owned. Petitioners reported the net income attributable to Z Dean Hakkak during the years at issue on Schedules E, as further discussed below. Z Dean Hakkak was incorporated in the State of California; its office was in Los Angeles. During the years at issue it had approximately five salaried employees (none of whom were attorneys and not including Mr. Hakkak) and four to five "contract attorneys".

In addition to practicing law Mr. Hakkak held ownership interests in several flowthrough entities that held rental real estate, as further discussed below.

II.     Mr. Hakkak's Rental Real Estate Endeavors

A.     Joshua Plaza

Mr. Hakkak held 98% and 99% ownership interests in 2011 and 2012, respectively, in Joshua Plaza, LLC (Joshua Plaza). Joshua Plaza was a limited liability corporation registered with the State of Texas and had three members, Mr. Hakkak and two of his siblings. They formed Joshua Plaza to hold commercial rental property in Joshua, Texas (Joshua Plaza property). Joshua Plaza purchased the Joshua Plaza property in 2007; the property is approximately 7,000 square feet

[*4] and subdivided into five rental units. Joshua Plaza performed no activities other than holding the Joshua Plaza property and renting the property's units.

During the years at issue most of the units in Joshua Plaza were leased. However, the only lease agreement that Mr. Hakkak executed as the "managing" or "authorized" member of Joshua Plaza during the years at issue with respect to a unit was in 2011 for Unit 3. The lease agreements (including lease assignment agreements) in the record for the other units were either executed before Joshua Plaza acquired the Joshua Plaza property or by Mr. Hakkak on Joshua Plaza's behalf before the years at issue.

B.    Conroe Plaza

During the years at issue Mr. Hakkak held a 99% ownership interest in Conroe Plaza, LLC (Conroe Plaza). Conroe Plaza was a limited liability corporation registered with the State of Texas and had two members, Mr. Hakkak and one of his siblings. They formed Conroe Plaza to hold commercial rental property in Conroe, Texas (Conroe Plaza property). Conroe Plaza purchased the Conroe Plaza property in 2008; the property is approximately 10,000 square feet

[*5] and subdivided into 10 rental units.[2] Conroe Plaza performed no activities other than holding the Conroe Plaza property and renting the property's units.

During the years at issue most of the units in Conroe Plaza were leased. However, the only lease agreements (including lease assignment agreements) that Mr. Hakkak executed as the "managing" or "authorized" member of Conroe Plaza during the years at issue with respect to a unit were for Unit A in 2011 and Units C, D, and F in 2012. The lease agreements in the record for any other units were either executed before Conroe Plaza acquired the Conroe Plaza property or by Mr. Hakkak on Conroe Plaza's behalf before the years at issue.

C.     Mr. Hakkak's Ownership Interests in Other Entities Holding Rental Real Property

During the years at issue Mr. Hakkak also had ownership interests in the following five flowthrough entities: (1) HMZ Holdings, LLC (HMZ Holdings), (2) Rowlett Plaza, LLC (Rowlett Plaza), (3) Statewide Realty, (4) West Covina Petroleum, Inc. (West Covina Petroleum), and (5) Kramer Center, LLC (Kramer Center). HMZ Holdings owned commercial rental property in Texas (Landmark 900); Rowlett Plaza also owned commercial rental property in Texas; Statewide Realty and Kramer Center owned residential rental property in California; and

---

[2]Any lease agreement with respect to Conroe Plaza actually refers to a unit as a "suite".

[*6] West Covina Petroleum owned a gas station also in California. Petitioners' tax reporting with respect to these entities is not (or no longer) at issue in this case.

D.      Management of Joshua Plaza Property and Conroe Plaza Property

Jung Yu of JYU Realty Management (JYU Realty) in Austin, Texas, managed the Joshua Plaza property and Conroe Plaza property.[3] He (along with his wife) collected rents from the tenants, deposited the rent checks that were not directly deposited into the respective bank accounts of Joshua Plaza and Conroe Plaza, and followed up with tenants regarding any late rents, including hiring a collection agency to collect past-due rents. In addition to Mr. Hakkak and at least one of his family members, Mr. Yu had signature authority over the bank accounts of Joshua Plaza and Conroe Plaza, and he would sometimes pay bills pertaining to the Joshua Plaza property and the Conroe Plaza property. Mr. Hakkak had no direct contact with tenants during the years at issue; tenants would contact JYU Realty for any issues with respect to their units and then Mr. Yu (or his wife) would contact Mr. Hakkak. JYU Realty was paid a management fee for providing these services.[4]

---

[3]During the years at issue Mr. Yu also served as the registered agent for Joshua Plaza and Conroe Plaza.

[4]JYU Realty was paid a management fee not only for managing the Joshua
                                                                (continued...)

[*7]   During the years at issue when units in the Joshua Plaza property or the Conroe Plaza property were vacant and available for rent, different leasing agents were used to facilitate their rental, including marketing the units and showing the units to prospective tenants.

During each year at issue Mr. Hakkak traveled to Texas approximately twice (generally for three or four days) to check on the various properties in Texas; however, the record is unclear as to whether he actually checked on the Joshua Plaza property and the Conroe Plaza property, and petitioners had no receipts from these travels.

Various bank account, credit card, insurance, and loan statements and documents pertaining to Joshua Plaza or Conroe Plaza were addressed to Mr. Hakkak at the address in Covina, California, which petitioners indicated was their home address on the 2011 joint return and the 2012 joint return.[5]   On the basis of

---

[4](...continued)
Plaza property and the Conroe Plaza property but also for managing Landmark 900 and another Texas property identified as "Emerald Plaza"; the record is silent as to which entity owns Emerald Plaza.  Additionally, one of the companies which served as a leasing agent with respect to the Conroe Plaza property was paid a nominal "Management Fee" in 2012; however, the record is unclear as to what management services it provided.

[5]At trial, however, petitioners stated that they resided in Upland, California, during the years at issue.  The Covina, California, address apparently is the
(continued...)

[*8] some of these statements and documents Mr. Hakkak prepared monthly or quarterly financial reports with respect to the Joshua Plaza property and the Conroe Plaza property spanning the years at issue.

III.    Petitioners' Tax Returns

Petitioners timely filed (with the assistance of a paid preparer) their Forms 1040, U.S. Individual Income Tax Return, for 2011 (2011 joint return) and 2012 (2012 joint return).

    A.      2011 Joint Return

As relevant here, on the 2011 joint return petitioners reported Mr. Hakkak's "W-2" wages from Z Dean Hakkak of $98,000, a business loss of $5,457 (which they detailed on a Schedule C attached to the 2011 joint return), and net income from rental real estate of $135,297 (which they detailed on a Schedule E and a Form 8582, Passive Activity Loss Limitations, attached to the 2011 joint return).

On their 2011 Schedule C petitioners reported the gross receipts and expenses attributable to Mr. Hakkak's provision of legal services as a sole proprietor (i.e., his non-personal injury work); they reported gross receipts of $29,759 and total expenses of $35,216.

---

[5](...continued)
address for Mr. Hakkak's parents.

**[\*9]** On their 2011 Schedule E and 2011 Form 8582 petitioners reported the income attributable to Z Dean Hakkak of $351,437[6] as net passive income and net losses from Joshua Plaza, Conroe Plaza, HMZ Holdings, Rowlett Plaza, Statewide Realty, West Covina Petroleum, and Kramer Center totaling $214,354 as allowed passive losses.[7]  They also reported prior years' unallowed passive losses from these entities of $1,786 as allowed passive losses.

B.    2012 Joint Return

As relevant here, on the 2012 joint return petitioners reported Mr. Hakkak's "W-2" wages from Z Dean Hakkak of $48,193, a business loss of $2,197 (which they detailed on a Schedule C attached to the 2012 joint return), "[o]ther income" of $18,000 (described as "Dean Hakkak" on the 2012 joint return), self-employment tax of $1,427, and a student loan interest deduction of $2,402.  They also attached a Schedule E and a Form 8582 to the 2012 joint return.

On their 2012 Schedule C petitioners reported the gross receipts and expenses attributable to Mr. Hakkak's provision of legal services as a sole

_____

[6]This amount was based on Z Dean Hakkak's total income of $1,593,616 and total deductions of $1,241,649 and Mr. Hakkak's pro rata share of a sec. 179 deduction of $530, as reported on Z Dean Hakkak's Form 1120S, U.S. Income Tax Return for an S Corporation, for 2011.

[7]As relevant here, the reported allowed passive losses from Joshua Plaza and Conroe Plaza totaled $20,260 and $55,155, respectively.

[*10] proprietor (i.e., his non-personal injury work); they reported gross receipts of $8,175 and total expenses of $5,978.

On their 2012 Schedule E and 2012 Form 8582 petitioners reported the income attributable to Z Dean Hakkak of $33,584[8] and the income attributable to West Covina Petroleum of $5,209 as net passive income and net losses from Joshua Plaza, Conroe Plaza, HMZ Holdings, Rowlett Plaza, Statewide Realty, and Kramer Center totaling $38,793 as allowed passive losses.[9]

## IV.  Audit and Determination

Respondent audited the 2011 joint return and the 2012 joint return.  During the audit petitioners provided calendars handwritten by Mr. Hakkak for 2011 and 2012 that reported the time he purportedly devoted to Joshua Plaza and Conroe Plaza.  These calendars reflected approximations of the hours spent on certain tasks, with many of them being investor-type activities.  For example, the calendars[10] included entries on various dates for "Rev Listings", "Verify [or

---

[8]This amount was based on total income of $1,247,176 and total deductions of $1,213,592, as reported on Z Dean Hakkak's Form 1120S for 2012.

[9]They also reported on the Form 8582 unallowed passive losses from these entities of $107,769.  As relevant here, the reported allowed passive losses from Joshua Plaza and Conroe Plaza totaled $2,304 and $33,050, respectively.

[10]The calendars are almost illegible.  These examples are taken from partial
(continued...)

**[\*11]** "Verified"] Expenses", "Rev Deposits", "New Tenant", "Analyzed [or "Analyze"] Financials", "Transfer for the loan", "Rev interest Rate", "Verified Deposits", "W.C. analysis", "Rev Returned Item", "energy reduction", "lowering energy use", "Rental Rates", "W.C. re Lero Agr", "Rev Tenants past due", "Escrow Statements", "Loan Rev", "Rev Tax and Insurance", "Review TI Costs", "W. Covina Marketing", "W. covina financial", "W. covina status", "W. covina Image", "W. covina supplier", "W. Covina Supply Agr", "Rev bank statements", "Rev property taxes", "Rev CAM charges", "W.C. re money", and "Prepare Document". Some of the entries indicated the time spent, others did not; and some of the same entries indicated the exact same amount of time spent.[11] Totals of 1,521.5 and 755 hours are reflected for 2011 and 2012, respectively.

Petitioners did not provide time logs or calendars reporting the time Mr. Hakkak spent during the years at issue with respect to Z Dean Hakkak or his Schedule C legal business. Mr. Hakkak suffered some health problems during the

---

[10](...continued)
transcriptions of these calendars that petitioners provided to respondent's counsel approximately a week before the trial of this case.

[11]As far as the entries with no indicated time spent, Mr. Hakkak stated at trial that the subsequent entry with time indicated represents the time spent for the entry with the time indicated <u>and</u> the above-listed entry with no time indicated.

[*12] years at issue, but at trial he acknowledged that he was able to work as an attorney (primarily from home) during these years.

In the May 12, 2015, notice of deficiency respondent made various adjustments to petitioners' income; to wit, respondent determined that the reported passive income attributable to Z Dean Hakkak was nonpassive and that therefore they could not net the reported passive losses from Joshua Plaza and Conroe Plaza (and the other reported entities) against this income. The parties have resolved all issues with respect to the years at issue except that petitioners now seek to treat as nonpassive the losses from Joshua Plaza and Conroe Plaza that they previously treated as passive.

OPINION

I.  Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Segel v. Commissioner, 89 T.C. 816, 842 (1987). As relevant here, this burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory

[*13] provision and to substantiate claimed loss deductions by maintaining and producing adequate records. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001). If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2).

Petitioners allege that the burden of proof should shift to respondent pursuant to section 7491(a) because they have provided "extensive, comprehensive, and corroborating evidence from witnesses, testimony and exhibits which consisted of over 3,000 pages, 135 exhibits, and a 10 hour trial" to substantiate that the losses from Joshua Plaza and Conroe Plaza are nonpassive. The evidence does not establish that the burden of proof should shift from petitioners to respondent under section 7491(a) as to any issue of fact because, as we conclude infra, petitioners have failed to maintain the requisite records and comply with the requisite substantiation requirements. See sec. 7491(a)(2)(A) and (B).

II.    Section 469 Losses From Rental Real Estate Activities

A taxpayer is allowed deductions for certain business and investment expenses under sections 162 and 212. Where a taxpayer is an individual, however,

**[*14]** section 469 generally disallows any passive activity loss for the taxable year in which the loss is sustained and treats it as a deduction allocable to the same activity for the next taxable year. Sec. 469(a) and (b). A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity generally is any activity involving the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial. Sec. 469(h)(1). Rental activity is treated as a per se passive activity, regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4).

As relevant here, section 469(c)(7) provides an exception to the rule that a rental activity is per se passive. The rental activities of a taxpayer in a real property trade or business who meets certain enumerated requirements (a real estate professional) are not subject to the per se rental activity rule. Sec. 469(c)(7)(A); sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1). See sec. 1.469-9(e)(1), Income Tax Regs.

[*15] Petitioners contend that Mr. Hakkak qualified as a real estate professional during the years at issue.[12]  A taxpayer qualifies as a real estate professional if: (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which he materially participates.  Sec. 469(c)(7)(B)(i) and (ii).

A taxpayer may establish hours of participation in a real property trade or business by any reasonable means.  Sec 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  Contemporaneous daily reports are not required if the taxpayer can establish participation by other reasonable means.  Id.  Reasonable means includes "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services".  Id.  However, this Court has noted

---

[12]In the case of a joint Federal income tax return, such as here, the requirements to qualify as a real estate professional are satisfied if either spouse separately satisfies these requirements; there can be no aggregation of spouses' hours to satisfy the requirements.  See sec. 469(c)(7)(B) (flush language); Moss v. Commissioner, 135 T.C. 365, 368-369 (2010).  That being said, petitioners do not contend that Ms. Naji was a real estate professional during the years at issue.

[*16] previously that it is not required to accept a postevent "ballpark guesstimate" or the unverified, undocumented testimony of taxpayers. See, e.g., Moss v. Commissioner, 135 T.C. 365, 369 (2010); Antonyshyn v. Commissioner, T.C. Memo. 2018-169; Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

In determining whether Mr. Hakkak was a real estate professional during the years at issue, there is no dispute that his rental real estate activities through Joshua Plaza and Conroe Plaza (and the other flowthrough rental real estate entities) constitute a real property trade or business. In addition we assume (without deciding) that he materially participated in this real property trade or business. However, even with this undisputed fact and favorable assumption, we find that Mr. Hakkak did not qualify as a real estate professional for either of the years at issue because petitioners failed to establish that Mr. Hakkak met the one-half personal service hours requirement and the 750-hour requirement.

Petitioners attempt to show that Mr. Hakkak was a real estate professional during the years at issue by relying on his testimony at trial, handwritten calendars (together with a partial transcription of these calendars), and documents consisting of emails and other written correspondence, lease agreements, bank account and credit card statements, invoices, loan statements and documents, photos, insurance

[*17] documents, financial reports, property tax records, and various commercial real estate news articles. They contend that the testimony and documentary evidence show that Mr. Hakkak "exerted comprehensive and extensive time, effort, labor, and consideration related to his operation, control and oversight over Conroe Plaza and Joshua Plaza." They contend that he handled the "day-to-day activities, operation, control and oversight of" the Joshua Plaza property and the Conroe Plaza property during the tax years at issue. They contend that he spent "at least" 1,600 hours in 2011 and "at least" 1,500 hours in 2012 on his rental real estate activities.

The calendar entries as reflected by the partial transcriptions were abbreviated and do not state with any specificity how Mr. Hakkak spent his time. Indeed, the entries do not delineate the activities pertaining to the Joshua Plaza property and the activities pertaining to the Conroe Plaza property; rather, there are several entries related to activities with respect to West Covina Petroleum but the rest are general in nature, seemingly lumping together activities with respect to the Joshua Plaza property and the Conroe Plaza property (and the other flowthrough rental real estate entities).[13]

---

[13]We note that respondent contends that Mr. Hakkak's ownership interests in Joshua Plaza and Conroe Plaza must be treated as separate real estate activities

(continued...)

[*18] Mr. Hakkak's vague testimony discussing (at best) generalities about what he might have done and how long he might have spent does not sufficiently supplement or explain the calendar entries (and their partial transcriptions). Indeed, the entries establish that Mr. Hakkak's real estate activities as a whole, if anything, were more akin to those of an investor and thus do not count towards the 750-hour requirement for the years at issue. See Antonyshyn v. Commissioner, at *10; see also Barniskis v. Commissioner, T.C. Memo. 1999-258, slip op. at 11-12; sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., supra.

The inadequacy of the calendars (and partial transcriptions) also highlights petitioners' inability to establish that Mr. Hakkak spent more than half of his personal service hours on his rental real estate activities. At trial petitioners discussed how Mr. Hakkak had health problems during the years at issue, and Mr. Hakkak testified that he worked as an attorney only from "12 to three" about "two times a week". However, despite these claims Mr. Hakkak still managed to have income of $449,437 in 2011 and $81,777 in 2012 from the practice of law (the Schedule E income attributable to Z Dean Hakkak plus his "W-2" wages from

_____

[13](...continued)
because petitioners failed to make an election to group the rental real estate activities of Joshua Plaza and Conroe Plaza as a single activity. See sec. 1.469-9(e)(1), Income Tax Regs. In the light of our holding we need not address this contention.

[*19] Z Dean Hakkak in each year),[14] and petitioners did not produce any calendars or timesheets related to Mr. Hakkak's legal work because he apparently had no such records. We decline to rely on petitioners' self-serving and uncorroborated testimony. "As we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

We conclude that the calendars (and partial transcriptions) are not trustworthy and decline to rely on them to reach the result petitioners desire. As for the other documents, they fail to adequately explain the work done by Mr. Hakkak with respect to Joshua Plaza and Conroe Plaza and the hours he spent on that work. Indeed, many of the documents show that he did not (but other people did) handle the day-to-day management of the Joshua Plaza property and the Conroe Plaza property and that different leasing agents were used to market and lease any vacant units in these properties.

---

[14]For those years he also had Schedule C gross receipts but his Schedule C expenses purportedly exceeded these gross receipts. We note that he claimed to have driven his personal vehicle 13,350 and 9,000 miles in 2011 and 2012, respectively, in connection with his non-personal injury work, resulting in reported Schedule C car and truck expenses (using the standard mileage rate) of $7,139 and $5,386, respectively.

**[*20]** Petitioners have failed to prove that Mr. Hakkak met the requirements set forth in section 469(c)(7)(B) for the years at issue.  Accordingly, he was not a real estate professional.  Petitioners cannot treat the losses from Joshua Plaza and Conroe Plaza as nonpassive losses.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.