# United States Tax Court

T.C. Memo. 2025-28

KELLY M. STRIEBY AND JAN E. SHARON-STRIEBY,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14815-20.                                      Filed April 3, 2025.

————

*John L. Sinclair*, for petitioners.

*Alicia E. Elliott*, *Colin M. Mierau*, and *Rachel J. Zepeda*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: The Internal Revenue Service (IRS) determined federal income tax deficiencies of $30,337 and $31,926 and accuracy-related penalties under section 6662(a)[1] of $5,590 and $6,385 for the 2015 and 2016 tax years (years at issue), respectively, for Kelly M. Strieby (Strieby) and Jan E. Sharon-Strieby (collectively, Petitioners). After concessions,[2] the issues remaining for decision are:

> (1) Whether Petitioners are entitled to credits claimed under section 48 for the years at issue; and

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2] Petitioners conceded that wages and capital gains they failed to report were includible in income.

**[\*2]**  (2) Whether Petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue.

*Background*

The parties submitted this case fully stipulated under Rule 122. The facts herein are based on the pleadings, as well as the parties' Stipulation of Facts, including the Exhibits attached thereto, which are incorporated by reference.[3] Petitioners resided in Arizona when the Petition was timely filed.

Petitioners filed joint federal income tax returns for the years at issue, and respondent determined income tax deficiencies and accuracy-related penalties under section 6662(a) for such years. In a Notice of Deficiency for Petitioners' years at issue, respondent made several adjustments, most of which Petitioners conceded pursuant to a Stipulation of Settled Issues. The remaining adjustments generally relate to credits Petitioners claimed under sections 38 and 48 (section 48 credits) in connection with a series of purported investments Strieby made in Solar Farm, LLC (Solar Farm). Solar Farm is an Arizona limited liability company treated as a partnership for federal income tax purposes. Strieby's involvement in Solar Farm for the years at issue was limited to signing the Membership Agreements and the Membership Funding Agreements described herein and paying Solar Farm pursuant to the Membership Agreements.

I.  *2015 Tax Year*

On September 11, 2016, Strieby and Charles Kirkland (Kirkland), the manager of Solar Farm, signed a Membership Agreement and a Membership Funding Agreement (collectively, 2016 Agreements) with respect to Strieby's purported investment in Solar Farm for 2015. The 2016 Agreements indicate that (1) Solar Farm will allocate at least $23,040 of investment tax credits to Strieby for the 2015 tax year,

---

[3] Respondent objects to Petitioners' Simultaneous Opening Brief (Petitioners' Opening Brief) on the grounds that (1) it was filed late and Petitioners did not request an extension before the due date, in violation of Rule 151(b) and (c)(3), and (2) it failed to include proposed findings of fact, in violation of Rule 151(e)(3). Respondent proposes as a remedy that this Court adopt the proposed findings of fact from respondent's Simultaneous Opening Brief. Rule 160 provides that the Court at every stage of a case will disregard any error or defect which does not affect the substantial rights of the parties. Accordingly, this Court takes into account respondent's objections to the facts set forth in Petitioners' Opening Brief but declines to provide the broader remedy respondent requested.

[*3] (2) Strieby's anticipated refund for the 2015 tax year is $34,818, and, accordingly, (3) Strieby will contribute $25,239 to Solar Farm after receiving the refund. On October 15, 2016, Petitioners timely filed a joint 2015 Form 1040, U.S. Individual Income Tax Return, on which they claimed an investment credit related to the purported investment in Solar Farm of $28,043, which was the exact amount of Petitioners' income tax liability for the 2015 tax year but in excess of the amount stated in the 2016 Agreements. On October 28, 2016, Petitioners were issued a refund of $34,818 for their 2015 tax year. On or about November 17, 2016, consistent with the 2016 Agreements, Strieby paid $25,239 to Solar Farm.

Solar Farm did not file Form 1065, U.S. Return of Partnership Income, for the taxable year ended December 31, 2015.

II.    *2016 Tax Year*

On July 5, 2017, Strieby and Kirkland signed a Membership Agreement and a Membership Funding Agreement (collectively, 2017 Agreements) with respect to Strieby's purported investment in Solar Farm for 2016. The 2017 Agreements indicate that (1) Solar Farm will allocate at least $31,763 of investment tax credits to Strieby for the 2016 tax year, (2) Strieby's anticipated refund for the 2016 tax year is $36,091, and, accordingly, (3) Strieby will contribute $28,587 to Solar Farm after receiving the refund. On July 10, 2017, Petitioners timely filed a joint 2016 Form 1040, on which they claimed an investment credit related to the purported investment in Solar Farm of $31,763, which was the exact amount of Petitioners' income tax liability for the 2016 tax year. On August 4, 2017, Petitioners were issued a refund of $36,091 for their 2016 tax year. On or about August 23, 2017, consistent with the 2017 Agreements, Strieby paid $28,587 to Solar Farm.

On October 3, 2017, Solar Farm filed its Form 1065 for the taxable year ended December 31, 2016 (2016 Form 1065). The Schedule K–1, Partner's Share of Income, Deductions, Credits, etc., attached to the 2016 Form 1065 does not match the Schedule K–1 attached to Petitioners' 2016 Form 1040. Solar Farm did not include a depreciation schedule with, or claim any depreciation deductions on, its 2016 Form 1065. Solar Farm did not attach Form 3800, General Business Credit, or Form 3468, Investment Credit, to its 2016 Form 1065.

[*4] III.    *Disputed Evidence*

The parties stipulated that all stipulated facts and Exhibits could be accepted as authentic but that the parties could object to their admission on the grounds of materiality, relevancy, or other reserved grounds.

A.    *Petitioners' Objections*

In addition to being the manager of Solar Farm for 2015 and 2016, Kirkland was, respondent argues, the promoter of a tax avoidance scheme involving Solar Farm. In support of this assertion, respondent seeks to have admitted three Exhibits to the Stipulation of Facts with respect to which Petitioners have reserved objections on the basis of unfair prejudice. The parties stipulated that Kirkland entered into a plea agreement with the United States, and the contested Exhibits are a copy of Kirkland's plea agreement (Exhibit 31-R), a Department of Justice (DOJ) press release about Kirkland's plea agreement (Exhibit 32-R), and a DOJ press release about Kirkland's sentencing (Exhibit 33-R). The plea agreement indicates that the entities involved in the tax avoidance scheme of which Solar Farm was a part generated false investment credits in excess of $180 million, even though the entities spent less than $6 million on solar equipment during tax years 2012 through 2018. It notes that one of the entities in the scheme "held itself out as engaging in the business of purchasing, installing, and leasing solar equipment." It further indicates that the taxpayers who invested in the scheme were not active participants in the scheme's entities because they had no participation in the businesses other than receiving Schedules K–1 and claiming the resulting tax benefits.

B.    *Respondent's Objections*

Strieby first began investing in Solar Farm in 2014. The Stipulation of Facts details section 48 credits Petitioners claimed with respect to Solar Farm for tax years 2013 and 2014, in addition to the details set forth *supra* Background Parts I and II. Although the Stipulation of Facts notes the contribution made by Strieby to Solar Farm in 2015 with respect to Petitioners' 2014 tax year, it does not note any contribution made in 2014 (or any other year) with respect to Petitioners' 2013 tax year. Accordingly, Petitioners seek to rely, as evidence of a contribution for the 2013 tax year, on a copy of a check, dated August 4, 2015, issued to Petitioners by the U.S. Treasury (2015 Treasury Check). Petitioners included a copy of the 2015 Treasury

[*5] Check as an Exhibit to Petitioners' Opening Brief, and respondent objects. In addition, respondent objects to two Exhibits attached to Petitioners' Opening Brief that consist of printouts of the table of contents of the Code.

## *Discussion*

### I.  *Admissibility of Evidence*

The Court generally follows the Federal Rules of Evidence (Fed. R. Evid.) when deciding evidentiary issues. *See* § 7453; Rule 143(a).

#### A.  *Respondent's Evidence*

Respondent seeks to have admitted Exhibits 31-R, 32-R, and 33-R as evidence that Solar Farm was part of a tax avoidance scheme to generate false investment credits. Exhibit 31-R is also cited as evidence that taxpayers who invested in Solar Farm, like Strieby, did not participate in the trade or business of Solar Farm other than by receiving Schedules K–1 and claiming the resulting tax benefits. Petitioners object to admission of the three Exhibits under Fed. R. Evid. 403 as creating unfair prejudice.

Fed. R. Evid. 403 allows the court to exclude otherwise relevant evidence if the "probative value is substantially outweighed" by unfair prejudice, confusion of the issues, waste of time, cumulative evidence, or other reasons. The rule also requires a balancing of probative value against detrimental impact through an analysis of the facts at hand. *Sundstrand Corp. & Subs. v. Commissioner*, 89 T.C. 810, 814 (1987). Absent a "powerful and compelling reason," the Court is hesitant to exclude evidence under Fed. R. Evid. 403, and "will be more likely to exclude evidence whose probative value is extremely low." *Sundstrand Corp.*, 89 T.C. at 814.

As discussed *infra* Discussion Part V.B, Petitioners dispute the existence of a trade or business, and the statements in Exhibit 31-R with regard to the purported operation of a trade or business may inform that dispute. Accordingly, this Court concludes that Exhibit 31-R has probative value. Exhibits 32-R and 33-R also have probative value, albeit lower value because they merely announce and summarize Kirkland's plea agreement in Exhibit 31-R. Accordingly, this Court must weigh the probative value of Exhibits 31-R, 32-R, and 33-R against the potential for unfair prejudice.

**[\*6]** This Court has the capacity to make a determination of the appropriate weight to give evidence without being prejudiced by its content. Excluding relevant evidence on the basis of unfair prejudice under Fed. R. Evid. 403 in a case in which there is no jury is a "useless procedure"; for the same reason that Fed. R. Evid. 403 assumes that "a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence," a "judge can also exclude those improper inferences from his mind in reaching a decision." *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *see also Gassaway v. Commissioner*, T.C. Memo. 2013-13, at \*9 (citing *Gulf States* and concluding that "the danger of unfair prejudice in a trial without a jury is minimal if considered at all"), *aff'd*, 544 F. App'x 579 (5th Cir. 2013).

Accordingly, this Court weighs the probative value of the Exhibits with the minimal to nonexistent potential of unfair prejudice and finds that the balance weighs in favor of admission. Thus, none of the Exhibits is excluded under Fed. R. Evid. 403 on the basis of unfair prejudice. Petitioners' objections are overruled, and Exhibits 31-R, 32-R, and 33-R are admitted.

### B. *Petitioners' Evidence*

Petitioners rely on a copy of the 2015 Treasury Check in support of Strieby's basis in his interest in Solar Farm. Respondent objects to admission of the check on the ground that it was introduced after submission of the case in violation of Rules 122, 143(c), and 151. Petitioners also seek to have admitted copies of the table of contents of the Code, to which respondent objects on the grounds that they do not constitute evidence.

Rule 143(c) provides that statements in briefs do not constitute evidence. The same is true of exhibits attached to briefs. Accordingly, neither the 2015 Treasury Check nor the copies of the table of contents attached to Petitioners' Opening Brief constitutes evidence. Accordingly, they are not admitted.

### II. *Burden of Proof*

The fact that a case has been submitted under Rule 122 "does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof." Rule 122(b). The Commissioner's determination in a Notice of Deficiency is generally presumed correct, and the taxpayer bears the burden of proving that the

**[\*7]** determination is incorrect. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a), if a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper income tax liability, and if certain conditions are met, the burden of proof shifts to the Commissioner. *See* Rule 142(a)(2). Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a), nor have they established that the requirements for shifting the burden of proof have been met; therefore, this Court concludes that the burden of proof has not shifted to respondent.

III.    *Overview of Arguments*

Respondent argues that Petitioners did not materially participate in the activities of Solar Farm, such that the investment credits Petitioners claimed under sections 38 and 48 with respect to Solar Farm are passive activity credits. Respondent also argues that Petitioners are precluded by section 469 from claiming such credits because they did not have any taxable income from passive activities in the years at issue and that Petitioners are liable for accuracy-related penalties under section 6662(a) because their underpayments for those years are attributable to negligence. *See* § 6662(a), (b)(1), (c). Petitioners counter that section 469 does not apply with respect to credits under section 48, that they had sufficient bases in their interests in Solar Farm to permit the credits to be claimed, and that, in any event, their position with respect to the credits did not reflect negligence.

IV.    *Overview of Relevant Law*

Section 38 allows a general business credit against the tax imposed by chapter 1 of the Code for a taxable year. The amount of the credit allowed includes the amount of the current year business credit, § 38(a)(2), which includes the amount of the investment credit determined under section 46, § 38(b)(1). The amount of the investment credit for a taxable year includes the amount of the energy credit under section 48. *See* § 46(2).

Section 48 provides that, for purposes of section 46, subject to exceptions provided in section 48(c), the energy credit for any taxable year is the energy percentage of the basis of each energy property, as defined in section 48(a)(3), placed in service during such taxable year. § 48(a)(1); *see also* Treas. Reg. § 1.46-1(d)(2). For purposes of section 46, property placed in service by a taxpayer during the taxable year includes

**[\*8]** the taxpayer's share of the basis (or cost) of property placed in service by a partnership in the taxable year of such partnership ending with or within the taxpayer's taxable year. *See* Treas. Reg. § 1.46-3(a)(1); *see also* Treas. Reg. §§ 1.46-3(f), 1.704-1(b)(4)(ii) (addressing allocation of a partnership's basis in property among its partners for purposes of determining an investment credit).[4]

However, under section 469, if, for any taxable year, a taxpayer is an individual, the taxpayer's passive activity credit for the year will not be allowed. *See* § 469(a)(1)(B), (2)(A). The passive activity credit is the amount by which the sum of credits from all passive activities allowable for the taxable year under subpart B (other than section 27) or subpart D of part IV of subchapter A of chapter 1 of the Code exceeds the regular tax liability of the taxpayer for the year allocable to all passive activities. *See* § 469(d)(2). A passive activity is any activity that involves the conduct of a trade or business and in which the taxpayer does not materially participate. § 469(c)(1).

For purposes of section 469, a taxpayer's activities include activities conducted through partnerships. Treas. Reg. § 1.469-4(a). However, a taxpayer materially participates in an activity only when he or she is involved on a regular, continuous, and substantial basis. § 469(h)(1). The measurement of participation focuses on work done by an individual who owns an interest in the activity, *see* Treas. Reg. § 1.469-5(f), and temporary Treasury regulations implementing section 469 generally require satisfaction of one of seven tests for an individual to be treated as materially participating in an activity for the taxable year, *see* Treas. Reg. § 1.469-5T.

V.      *Eligibility for Section 48 Credits*

      A.      *Applicability of Section 469 to Section 48 Credits*

As noted, respondent argues that section 469 precludes Petitioners from claiming credits determined under section 48 with respect to Solar Farm. Petitioners counter that section 469 does not apply with respect to section 48 credits. According to Petitioners, because the definition of passive activity credit references credits allowable under subpart B or subpart D of part IV of subchapter A, *see* § 469(d)(2), the fact that section 48 appears in subpart E of part IV of

---

[4] Although the regulations under section 46 were issued under a prior version of the statute and contain outdated references, the rules continue to apply for purposes of the energy credit. *Cf.* Treas. Reg. § 1.6418-3(b).

**[\*9]** subchapter A means that section 48 credits are not subject to section 469. However, as described *supra* Discussion Part IV, the energy credit determined under section 48 is a component of the investment credit under section 46, which is itself a component of the general business credit under section 38. Section 48 sets forth rules for determining the energy credit, but, contrary to Petitioners' argument, does not itself allow any credit. Rather, the amount determined under section 48 and included in the amounts under section 46, and thus section 38, is allowable only under section 38. Because section 38 is in subpart D of part IV of subchapter A, the section 48 energy credit is a credit allowable under that subpart, and, accordingly, potentially, a passive activity credit. *See* § 469(d)(2)(A)(i). The Court has explained as much before. *See Olsen v. Commissioner*, T.C. Memo. 2021-41, at \*41 ("As relevant here, the term 'passive activity credit' means the amount (if any) by which all general business credits (including energy credits) from passive activities exceed the taxpayer's 'regular tax liability . . . for the taxable year allocable to all passive activities.'" (quoting § 469(d)(2)(B)), *aff'd*, 52 F.4th 889 (10th Cir. 2022).[5] Petitioners' unsupported argument about the congressional purpose in redesignating the statutory provision determining the energy credit in 1984 is irrelevant given the clear statutory text.[6]

---

[5] The Court has also previously traced through the chain of cross-references to determine that the section 48 energy credit is a credit allowable under section 38, albeit for a different purpose. *See Lum v. Commissioner*, T.C. Memo. 2012-103, 2012 WL 1193182, at \*4 ("Through cross-referencing sections 38(b)(1), 46(2), and 48(a), the Internal Revenue Code establishes that the section 48 business energy investment credit is one type of section 38 general business credit."); *Uyemura v. Commissioner*, T.C. Memo. 2012-102, 2012 WL 1193190, at \*4 (same). And the Court has also made clear without discussion that section 469 can apply to section 48 credits. *See Golan v. Commissioner*, T.C. Memo. 2018-76, at \*32–33; *Lum v. Commissioner*, 2012 WL 1193182, at \*4; *Uyemura v. Commissioner*, 2012 WL 1193190, at \*4.

[6] Before 1984, section 38 allowed a credit in the amount determined under subpart B of part IV of subchapter A of chapter 1 of the Code, and section 46, which determined an investment credit based in part on energy property, was in that subpart. In 1984 subpart B was redesignated subpart E. Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 474(n), 98 Stat. 494, 833. However, the legislation referenced by Petitioners makes clear that energy credits have consistently been allowable under section 38, which was in subpart D of part IV of subchapter A of chapter 1 of the Code when section 469 was enacted. *See* Deficit Reduction Act of 1984 §§ 473, 474(o), 98 Stat. at 827, 834–35 (enacting a new section 38 in subpart D, to cross-reference section 46, revised paragraphs of which continued to determine an investment credit based in part on energy property); *see also* Tax Reform Act of 1986, Pub. L. No. 99-514, § 501, 100 Stat. 2085, 2233 (enacting section 469 while making no changes to the designation of the relevant statutory provisions).

[*10]  B.    *Section 469 Trade or Business Requirement*

Petitioners also cite in support of their argument Revenue Ruling 2010-16, 2010-26 I.R.B. 769, which concludes that section 469 does not apply to the section 45D new markets credit in certain circumstances. Petitioners highlight that Revenue Ruling 2010-16 notes that a passive activity must be undertaken in connection with the conduct of a trade or business. They then review the standards outlined therein for determining whether an activity constitutes a trade or business, concluding that Strieby's minimal involvement with Solar Farm means that Strieby was not treated as participating in a trade or business by reason of his investment. However, Petitioners misconstrue the significance of both Revenue Ruling 2010-16 and the trade or business requirement of section 469.

As a preliminary matter, Revenue Ruling 2010-16 sets forth the Commissioner's position, which is not binding on this Court. *See Rauenhorst v. Commissioner*, 119 T.C. 157, 171 (2002). Nevertheless, its reasoning may be applied to the extent relevant and persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Petitioners apparently focus their trade or business analysis on Strieby's investment in Solar Farm because situation 1 of Revenue Ruling 2010-16 focuses its analysis on an individual taxpayer's investment in an entity. However, the focus in the Revenue Ruling is driven by the particular provisions of section 45D, which determines a credit for a taxpayer's qualified equity investment in a qualified community development entity (CDE). Because the section 45D credit relates to an investment in a CDE, an entity which might itself be engaged in a trade or business, Revenue Ruling 2010-16 indicates that the trade or business of the CDE is irrelevant. It further explains that the inquiry under section 469 relates to whether the taxpayer investing in the CDE does so in connection with a trade or business.

However, contrary to Petitioners' assertion that the section 48 credit is not "intrinsically different" from the section 45D credit so as to "warrant different treatment regarding passive activities," this Court concludes otherwise. Petitioners' investment in Solar Farm could not, in and of itself, qualify it for a section 48 credit, the way that the individual's investment in the CDE in Revenue Ruling 2010-16 did. The Solar Farm interests do not constitute energy property. Instead, it is Solar Farm's purported activity that, instead of being disregarded as in Revenue Ruling 2010-16, could allow Petitioners to claim the section 48 credit.

**[\*11]** As noted *supra* Discussion Part IV, for purposes of section 46, property placed in service by a taxpayer during the taxable year includes the taxpayer's share of the basis (or cost) of property placed in service by a partnership in the partnership's taxable year ending with or within the taxpayer's taxable year. *See* Treas. Reg. § 1.46-3(a)(1). This allows a partner in a partnership that acquires energy property to satisfy the condition for the section 48 credit that energy property be placed in service. *See* § 48(a)(1). However, for property to constitute energy property, it must be property with respect to which depreciation (or amortization in lieu of depreciation) is allowable. *See* § 48(a)(3)(C). And for depreciation or amortization to be allowable, property must be used in a trade or business or held for the production of income. *See* §§ 167(a), 174(a) and (b).

Accordingly, for Petitioners to qualify for the section 48 credit with respect to Strieby's investment in Solar Farm, the property purportedly held by Solar Farm must be used in a trade or business or held for the production of income. And for purposes of section 469, a taxpayer's activities include activities conducted through partnerships. Treas. Reg. § 1.469-4(a). Therefore, if Solar Farm engaged in the activities necessary for Petitioners to be eligible for the section 48 credit, Strieby would also be treated as having engaged in such activities, notwithstanding Petitioners' arguments to the contrary. As described in Kirkland's plea agreement, the entities in the scheme of which Solar Farm was a part did hold themselves out as in the trade or business of purchasing, installing, and leasing solar equipment. Therefore, unless Strieby materially participated in the purported trade or business from which the section 48 credit derived, the section 48 credits are passive activity credits.[7]

Petitioners acknowledge that their only activity with respect to Solar Farm was signing documents and making contribution payments. Thus, Petitioners cannot be considered to have materially participated in Solar Farm's business. *See* § 469(h)(1); Treas. Reg. § 1.469-5T. Furthermore, Petitioners have no income from passive activities and thus no regular tax liability allocable to passive activities. Accordingly, the section 48 credits Petitioners claimed for the years at issue are

---

[7] Petitioners do not argue that Solar Farm's property was not used in a trade or business, but rather was held for the production of income, such that depreciation would nevertheless be allowable with respect to it. Accordingly, this Court does not consider that possibility.

**[\*12]** passive activity credits, *see* § 469(d)(2), which Petitioners are not allowed under section 469, *see* § 469(a)(1).

VI.     *Section 6662(a) Penalties*

    A.     *Burden of Production*

Section 7491(c) provides that the Commissioner has the burden of production in any court proceeding with respect to the liability of an individual for any penalty. The Notice of Deficiency determined penalties under section 6662 on alternative bases of negligence, substantial understatement of income tax, substantial valuation misstatement, and economic substance. *See* § 6662(a), (b)(1), (2), (3), (6). However, respondent has produced a Civil Penalty Approval Form that mentions only negligence, and respondent addresses negligence only on brief. Petitioners do not dispute that respondent met the requirements of section 6751(b) that the initial determination of negligence penalties have been personally approved in writing by an immediate supervisor or other such official designated by the Secretary to give such approval. Accordingly, this Court holds that respondent has satisfied the burden of production with regard to the negligence penalty. Respondent must also "come forward with sufficient evidence indicating that it is appropriate to impose the . . . penalty," but need not introduce evidence regarding reasonable cause, discussed *infra* Discussion Part VI.C, because the burden of proof for that issue remains on Petitioners. *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).

    B.     *Applicability of Section 6662(a) Penalties*

Section 6662 imposes a penalty of 20% of the portion of an underpayment of tax required to be shown on a return if it is attributable to, as relevant in this case, negligence or disregard of rules or regulations. *See* § 6662(a) and (b)(1); *see also* Treas. Reg. § 1.6662-2(a) and (b). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code. § 6662(c); Treas. Reg. § 1.6662-3(b)(1). Negligence is strongly indicated if a taxpayer fails to make a reasonable attempt to ascertain the correctness of a credit on a return that would seem to a reasonable and prudent person to be "too good to be true." Treas. Reg. § 1.6662-3(b)(1)(ii).

A return position that has a reasonable basis is not attributable to negligence. *Id.* subpara. (1). "Reasonable basis is a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper." *Id.* subpara. (3). A position reasonably based

**[\*13]** on one or more authorities specified in Treasury Regulation § 1.6662-4(d)(3)(iii), taking into account the relevance and persuasiveness of the authorities, will generally satisfy the reasonable basis standard. *Id.* subdiv. (ii). The specified authorities include applicable provisions of the Code and regulations, revenue rulings, and court cases. *Id.* subdiv. (iii).

Petitioners purported to acquire membership interests in Solar Farm for each year well after the year closed. Such membership interests purportedly entitled them, effort free, to investment credits in the exact amount of their tax liability and, for the 2015 tax year, in excess of the amount stated in the 2016 Agreements. A "reasonable and prudent" person should have found this arrangement "too good to be true" and made a reasonable attempt to ascertain the correctness of the credits. *See id.* subdiv. (ii). The lack of any indication that Petitioners made reasonable attempts to independently verify whether their tax position in connection with the Solar Farm investment was proper strongly indicates negligence.

Petitioners argue that even if they are not eligible for section 48 credits, section 6662(a) penalties should not be imposed. They argue that their position regarding the applicability of section 469 to section 48 credits is reasonable and that any underpayment of tax required to be shown on the return is not attributable to negligence.[8] However, not only is their position contradicted by the statutory text, but this Court's prior caselaw also confirms that section 469 applies to section 48 credits. *See supra* note 5. Furthermore, although Petitioners cite Revenue Ruling 2010-16 in support of their position concerning the applicability of section 469 to section 48 credits, it is, as discussed *supra* Discussion Part V.B, not applicable to their particular facts. Accordingly, Petitioners cannot rely on Revenue Ruling 2010-16 to satisfy the reasonable basis standard. *See* Treas. Reg. § 1.6662-3(b)(3).

Respondent argues that the section 6662 penalties apply to the full amounts of Petitioners' underpayments even though they are only "*primarily* attributable to the disallowed energy credits." (Emphasis added.) Petitioners' briefs do not discuss the applicability of the section 6662 penalty to the underpayments attributable to the omitted income

---

[8] Petitioners also make various arguments with respect to potential alternative bases for the imposition of penalties under section 6662(a) and with respect to alternative arguments for disallowing the section 48 credits. Because respondent does not argue that section 6662(a) applies on such bases, this Court does not consider those arguments.

[*14] that Petitioners conceded, *see supra* note 2; therefore, they have abandoned this issue, *see Bradley v. Commissioner*, 100 T.C. 367, 370–71 (1993) (treating issues not raised on brief as abandoned). Accordingly, this Court holds that the entirety of Petitioners' underpayments for the years at issue are attributable to negligence.

C.    *Reasonable Cause and Good Faith Under Section 6664(c)*

The section 6662(a) penalty does not apply to a taxpayer who had reasonable cause for an underpayment and acted in good faith. *See* § 6664(c)(1); Treas. Reg. § 1.6664-4(a). The determination of whether a taxpayer acted with reasonable cause and in good faith is made by the Court on a case-by-case basis. *See Higbee*, 116 T.C. at 448; Treas. Reg. § 1.6664-4(b). The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Treas. Reg. § 1.6664-4(b). Good-faith reliance on an information return may constitute reasonable cause if reasonable under all the circumstances. *Id.* Similarly, good-faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may be a basis for a reasonable cause defense. *See Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); *see also* Treas. Reg. § 1.6664-4(b) and (c).

Petitioners might be understood to argue that they have reasonable cause for and acted in good faith with respect to any underpayment. *See* § 6664(c)(1); Treas. Reg. § 1.6664-4(a). However, notably, Petitioners do not argue that they relied on an information return or professional advice. In fact, for Petitioners' 2015 tax year, there was no Schedule K–1 issued to Petitioners, and for 2016, their return was filed before they received a Schedule K–1 from Solar Farm, leading to incongruities in the schedules. Even if Petitioners had relied on an information return to determine the amount of a potential section 48 credit, it would have provided no support for their position concerning the applicability of section 469. And Petitioners did not rely on the information returns with respect to their omitted wage income and capital gains. Consistent with the analysis *supra* Discussion Part VI.B with regard to negligence, this Court concludes that section 6664(c) does not apply. Accordingly, the section 6662(a) penalty applies with respect to the full amounts of the underpayments for the years at issue.

**[\*15]** VII.   *Conclusion*

This Court has considered the arguments of the parties not specifically addressed in this Opinion and concludes that they are either without merit or irrelevant. For the reasons discussed herein, this Court holds that Petitioners are not entitled to any credits determined under section 48 with respect to Solar Farm for their 2015 and 2016 tax years and are liable for section 6662(a) accuracy-related penalties with respect to the entirety of their underpayments for those years.

To reflect the foregoing,

*Decision will be entered for respondent.*